UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREVOR BRIEDE,

        Plaintiff,

    vs.

THE VALSPAR CORPORATION,

        Defendant.

_____/

Civil Action No.
12-CV-13406

HON. MARK A. GOLDSMITH

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (DKT. 13)

### I.      INTRODUCTION

The various claims in this case arise from a purported contractual relationship between Plaintiff Trevor Briede and Defendant The Valspar Corporation.  Plaintiff filed a putative class action complaint, which brings five counts against Defendant: (i) breach of contract; (ii) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq., and other state deceptive and unfair trade practices acts; (iii) breach of the implied covenant of good faith and fair dealing; (iv) unjust enrichment; and (v) unconscionability. Am. Compl. (Dkt. 11).  The amended complaint seeks certification of the class, damages, costs, restitution, and injunctive relief.  Id. at 25.  Defendant filed the instant motion to dismiss Plaintiff's amended complaint on November 1, 2012 (Dkt. 13).  The motion is fully briefed, and a hearing was held on February 21, 2013.  After the hearing, the Court ordered supplemental briefing, which the parties submitted (Dkts. 25, 26).  For the reasons that follow, the Court denies the motion to dismiss.

## II.     BACKGROUND

On February 6, 2010, Plaintiff Trevor Briede, a resident of Florida, purchased a sofa and a rug runner from Haverty's Furniture in Naples, Florida.  Am. Compl. ¶¶ 3, 27 (Dkt. 11). Plaintiff also bought a Guardsman "Gold in Home" 5-Year Protection Plan from Haverty's Furniture to cover the sofa and the rug.  Id. ¶ 28.  Plaintiff signed a form attached to his sales receipt for these purchases.  Id.; Sales Receipt, Ex. 2 to Pl. Resp. (Dkt. 16-3).  The sales receipt records Plaintiff's purchase of, among other items, a rug costing $199.99 and a Guardsman Gold Plan and Gold Kit for $249.99.  Sales Receipt, Ex. 2 to Pl. Resp.  The receipt also states, "Please visit www.myHavertys.com or contact customer service for more information on your furniture protection plan."  Id.  According to the amended complaint, "Plaintiff was not aware of the existence, the location, or the Terms of the Protection Plan and Service Contract at the time of purchase."  Am. Compl. ¶ 29.

After Plaintiff made these purchases, the Furniture Protection Plan and Service Contract was provided to Plaintiff in a sealed box of furniture cleaning supplies.  Id. ¶ 29.  The box of cleaning supplies is labeled "FURNITURE CARE KIT," and text on the box states in part, "The Guardsman Furniture Protection Plan covers your new furniture against accidental stains and damages."  Photographs, Ex. 1 to Pl. Resp. (Dkt. 16-2).

The Furniture Protection Plan sent to Plaintiff states, "This Five (5) Year Guardsman Gold Furniture Protection Plan ("Protection Plan") is a service contract between you (the original purchaser), the consumer, and The Valspar Corporation, through its Guardsman business unit . . . .".  Ex. 2 to Am. Compl. (Dkt. 11-3).  It further states:

> 1.  If a stain or damage listed in the "What is Covered" section occurs during the term of this Protection Plan, Guardsman agrees to provide Service ("Service") as outlined in the "SERVICE PROCEDURES" section of this Protection Plan.
> . . . .

2

> 3.  This Protection Plan is valid for a period of five years ("The Term") from the delivery date of your new furniture and area rug.
>
> 4.  This plan covers new furniture and area rug up to a maximum $30,000 in retail value.
>
> 5.  This plan is only valid for new furniture and area rug that was purchased at the same time as this Protection Plan, and appears on the sales receipt as such.

Id.  The Service Contract covers some types of damage to area rugs, including "[a]ny household stain from a specific incident."  Id.  The Service Contract excludes from this coverage "[s]tains or damages caused by animals," although it does cover non-repetitive "pet bodily fluid stains."

Id.  The Service Contract states, "repetitive bodily fluid stains are considered preventable occurrences and will not be eligible for service."  Id.  The Service Contract also does not cover odors.  Id.

In a section titled "REQUIREMENTS FOR REQUESTING SERVICE," the Service Contract provides:

> Failure to meet any of the following requirements can result in a denial of Service under this Protection Plan.
> The furniture and area rug must have been delivered and installed soil-free and damage free from the store where it was purchased.  You must have performed all routine and preventative maintenance, as recommended by the manufacturer.
> 1.  Any stain or damage must be reported to Guardsman within five (5) business days of the date that the stain or damage is discovered.  Notify Guardsman by calling (800) 482-7340, or by filing a Service Request at guardsman.com.
> . . . .
> 3.  Complete and return the Service Request Form.
> 4.  Provide Guardsman with a copy of the sales receipt and a copy of this Protection Plan within 30 days after reporting your stain or damage.

Id. (emphasis in original).  The section of the Service Contract titled "SERVICE PROCEDURES" provides, in relevant part:

> If Guardsman determines that the reported stain or damage is covered under this Protection Plan, Guardsman will perform one or more of the following.
> • Guardsman may provide a cleaning kit or advice on how to remove the stain.
> • Guardsman may dispatch an authorized technician to remove the stain or repair

the damaged area.
. . . .

- Guardsman may offer a settlement amount up to the original purchase price of the furniture or area rug.  A settlement will terminate this Protection Plan on that piece of furniture or area rug.
- If the particular store location where you originally purchased your furniture and/or area rug ("Store") has closed, no longer carries Guardsman as a supplier, changed ownership, or has stopped selling new furniture and area rugs since your purchase, Guardsman will give you a refund of the original purchase price of this Protection Plan.

Id. (emphasis and formatting in original).

The rug was delivered to Plaintiff on February 10, 2010, and on July 4, 2011, Plaintiff's cat urinated on the rug.  Am. Compl. ¶¶ 32, 34.  On July 6, 2011, Plaintiff "called the Guardsman 800 number and reported the event to a Guardsman representative."  Id. ¶ 35.  On July 13, 2011, Plaintiff sent the completed Customer Service Request Form to Guardsman, with an attached copy of the sales receipt.  Id. ¶ 37.  On July 20, 2011, a service technician from one of Guardsman's service providers went to Plaintiff's house and treated the rug with a product designed to remove animal urine.  Id. ¶¶ 39, 40.  The urine stain remained after the treatment, and Plaintiff contacted the service technician to inform him there was a still a stain.  Id. ¶ 42.  "The technician told Plaintiff that filing another form with Guardsman was not necessary and that he would pick up the rug for a more thorough cleaning off premises."  Id.

The technician removed the rug from Plaintiff's house for about two weeks to treat it.  Id. ¶ 43.  When the rug was returned to Plaintiff, "there was an overpowering and nauseating chemical odor in the rug that was not present before the technician's second treatment . . . . [and] the urine stain was still visible."  Id. ¶ 44.  Plaintiff again contacted the service technician, who told Plaintiff to air the rug outdoors for an extended period of time.  Id. ¶ 46.  Plaintiff let the rug air out on his screened porch for several months.  Id. ¶ 47.  Plaintiff examined the rug on February 20, 2012, and determined that the chemical odor was still too strong for the rug to be

usable, and the urine stain was still visible.  Id. ¶ 48.  Plaintiff's wife called Guardsman to report the problem, and the Guardsman service representative told Plaintiff's wife to file a second Service Request Form.  Id. ¶ 49.

On March 25, 2012, Plaintiff sent a second Service Request Form to Guardsman, and on April 6, 2012, a Guardsman representative contacted Plaintiff by phone.  Id. ¶¶ 50, 51.  Plaintiff told the representative of the chemical odor and the remaining urine stain.  Id. ¶ 51.  The Guardsman representative "informed Plaintiff that odors were not covered by the Protection Plan and Service Contract and that his claim would be closed."  Id.  Within a day, Guardsman notified Plaintiff that his Service Request Form was denied because it was not received within 30 days of first reporting the damage to the rug.  Id. ¶ 52.  Plaintiff asked to speak with a manager, and Plaintiff was transferred to several other individuals, but was "denied access" to the manager with whom Plaintiff wished to speak.  Id. ¶ 54.   Plaintiff alleges that in the phone calls, the Guardsman representatives denied his claim for various illegitimate reasons, including: the plan does not cover odors; the claim was not filed within five days of the cleaning incident; the follow-up claim was not filed within thirty days of the initial claim; and the plan does not cover repetitive animal stains.  Id. ¶ 55.

On April 16, 2012, Plaintiff received a letter from Guardsman denying Plaintiff's claim, on the grounds that "the reported damage was not covered under the Terms of the Protection Plan and Service Contract and that the purported deadlines for returning the Service Request Form were not met."  Id. ¶ 58.  Plaintiff filed complaints with the Michigan Attorney General's Consumer Protection Division and with the Michigan Better Business Bureau.  Id. ¶¶ 56, 57.  Defendant subsequently submitted a letter to the Michigan Attorney General, stating that "as a customer accommodation, we are willing to offer a refund of the purchase price of the Plan in the

amount of $249.99.  If he would like to accept the refund, please contact me in writing at the address listed above so we can make the necessary arrangements."  Letter of 05/11/12, Ex.1 to Pl. Supp. Br. (Dkt. 26-2).  It is undisputed that Plaintiff has not accepted a refund from Defendant.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a complaint must plead sufficient specific factual allegations, and not just legal conclusions, in support of each claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).  A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief."  Id. at 679.  This pleading standard applies to "all civil actions".  Id. at 684.

In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document."  Williams v. CitiMortgage, Inc., 498 F. App'x 532, 536 (6th Cir. 2012) (citations and quotation marks omitted).

## IV.    ANALYSIS

### A.  Choice of Law

"In diversity cases, the district court is to apply the choice of law rules of the state in which the court sits."  Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 501 (6th Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Therefore, the Court applies

6

Michigan's choice of law rules. Where a dispute arises out of a contractual relationship, Michigan applies the Restatement (Second) of Conflict of Laws §§ 187, 188. Chrysler Corp. v. Skyline Indus. Servs. Inc., 528 N.W.2d 698, 703 (Mich. 1995). Restatement § 188 applies where, as here, the contract at issue does not contain a choice of law provision.

In determining which law applies, the Court must determine which state "has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) § 188(1). In applying the principles stated in § 6, the Court considers "the place of contracting;" "the place of negotiation of the contract;" "the place of performance;" "the location of the subject matter of the contract;" and "the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) § 188(2). In the instant case, the place of contracting, place of performance, and location of the rug are in Florida. Plaintiff is also a Florida resident. Am. Compl. ¶ 3. Therefore, although Defendant is a Delaware corporation with its principal place of business in Minnesota, id. ¶ 4, the factors as a whole indicate that Florida "has the most significant relationship to the transaction and the parties." The Court will apply Florida law.

### B.  Refund

The parties dispute whether Defendant's offer to refund the purchase price of the Furniture Protection Plan defeats any or all of Plaintiff's claims. Defendant argues that the offer of the refund defeats the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claim, the unjust enrichment claim, the unconscionability claim, and the breach of contract claim. Def. Supp. Br. at 1 (Dkt. 25).

Plaintiff argues that the refund offer does not defeat any of his claims. Pl. Supp. Br. at 1 (Dkt. 26). Plaintiff contends that the refund "offer" was never an offer in the first place, because it was in the form of a letter to the Michigan Attorney General declaring Defendant's willingness

7

to offer a refund.  Id. at 1-2.  Plaintiff further argues that the "offer" was incomplete and undefined, and therefore was not an enforceable offer.  Id. at 2.  Finally, Plaintiff asserts that the "offer" was not a settlement offer of full relief, and it therefore cannot defeat the claims at issue. Id. at 2-3.

A "settlement proposal [must] be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification."  Alamo Financing, L.P. v. Mazoff, __So. 3d__, 2013 WL 1748597, at *2 (Fl. Dist. Ct. App. Apr. 24, 2013) (citation and quotation marks omitted).  See also Restatement (Second) of Contracts § 33(1) ("Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.").

In this case, Defendant sent a letter to the Michigan Attorney General stating that Defendant was "willing to offer a refund of the purchase price."  It further stated that if Plaintiff would like to accept the refund, he should contact Defendant's representative to "make the necessary arrangements."  This letter is not so definite in its terms that Plaintiff would be reasonably certain of any performance he must render were he to accept the proposal in the letter.  Furthermore, the statement in the letter regarding contacting Defendant to make necessary arrangements indicates that the parties would have to clarify the promises and performances to be rendered.  For these reasons, the Court agrees with Plaintiff that the refund "offer" is best characterized as an offer to make an offer, not as a true settlement offer in and of itself. Therefore, the Court does not reach the parties' arguments regarding whether an offer to refund the purchase price of the Protection Plan would have mooted or defeated any or all of Plaintiff's claims.

### C.  Breach of Contract (Count One)

In count one, Plaintiff alleges that Defendant "materially breached" terms of the service

contract, including the contract's coverage of new furniture up to $30,000 in value, the contract's coverage of furniture purchased at the same time as the plan, the contract's provision for services as outlined in the "Service Procedures" section, and the coverage of pet bodily fluid stains.  Am. Compl. ¶¶ 80, 14, 15, 17-26.  Plaintiff alleges that Defendant materially breached the service contract by: (i) refusing coverage, although claims were made within the five-day reporting period; (ii) refusing coverage based on undisclosed requirements that follow-up claims must be made within either five days or thirty days; (iii) using the "odor" exclusion to refuse coverage based on damage to a covered item; and (iv) using the "repetitive pet bodily fluid stain" exclusion to wrongfully refuse coverage based on damage to covered items.  Id. ¶ 80.

Defendant argues that count one must be dismissed because Plaintiff does not allege that Defendant failed to materially perform a term of the Service Contract.  Def. Br. at 6 (Dkt. 13).  Defendant argues that, under the contract, it was entitled to deny Plaintiff's complaint regarding the chemical odor in the rug.  Id. at 7.  Defendant further argues that Plaintiff did not follow the requirements for requesting service, including contacting Guardsman within five days of discovering damage to the rug, and that Defendant was entitled to reject Plaintiff's late claim. Id. at 7-8; Def. Rep. at 1-2 (Dkt. 17).  Defendant contends that it performed its obligations under the Service Contract when it sent a technician in response to the first, timely reported, condition. Def. Br. at 9.

Plaintiff responds that his complaint specifically identifies the terms of the Service Contract that Defendant breached, and that Defendant also breached the contract by imposing additional conditions on coverage and by making the condition of Plaintiff's rug worse.  Pl. Resp. Br. at 4-6 (Dkt. 16).  He further argues that his breach of contract claim implicates fact issues that are inappropriate to decide at this stage.  Id. at 5.

9

In Florida, the "elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006); see also MDS (Canada) v. Rad Source Technologies, Inc., 822 F. Supp. 2d 1263, 1298 (S.D. Fla. 2011) (in Florida, a claimant must prove a material breach of contract to prevail on a breach of contract claim).

For the reasons that follow, the Court concludes that dismissal is not warranted at this early stage of the proceedings. The allegations in the complaint, if taken as true, state a plausible claim that Defendant breached a material term of the contract. Plaintiff alleges that Defendant undertook to dispatch a service technician pursuant to the contractual provision stating that Defendant may send a service technician to "remove the stain or repair the damaged area." However, the service technician did not remove the stain. If Plaintiff's allegations are true, the service technician significantly worsened the problem with the rug, and Defendant subsequently denied Plaintiff's claim to repair the further damage. It is plausible, at this stage and without any factual development, that Defendant breached the term of the contract providing that it may dispatch a service technician to "remove the stain." In particular, the parties agree that the contract implies a duty for Defendant to make a reasonable or good faith attempt to correct the stain in the rug. See Def. Supp. Br. at 10 (Dkt. 25) (asserting that Plaintiff conceded at oral argument that Defendant had a duty to make a reasonable effort). Based on the amended complaint, it is plausible that Defendant did not make a reasonable effort to "remove the stain" or to correct the subsequent problems that were allegedly caused by the technician. In short, factual development is required on this issue.

The Court also notes that factual development is required regarding the parties' contractual obligations. In particular, it is plausible, based on the complaint, that the

representation by the service technician – that Plaintiff need not file an additional claim with Defendant for the odor and continued stain – modified Plaintiff's reporting duties under the contract.  Factual development is required on this issue, including (i) whether the service technician was an agent of Defendant, and (ii) whether Plaintiff's interactions with the technician modified the contractual terms.  See Pathway Fin. v. Miami Int'l Realty Co., 588 So. 2d 1000, 1005 (Fla. Dist. Ct. App. 1991) ("A subsequent oral modification between the parties and action in reliance thereon creates a new contractual obligation.  Any testimony regarding oral modification does not violate the rule against parol evidence."  (citation omitted)).[1]

For these reasons, dismissal of count one is not warranted.

### D.  Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count Two)

In count two, Plaintiff alleges that Defendant engaged in unconscionable, unfair, and/or deceptive acts by (i) failing to disclose to Plaintiff the existence or terms of the Service Contract; (ii) selling an "illusory" Service Contract that effectively imposes no obligations on Guardsman; (iii) imposing an undisclosed time period for reporting damage and returning required documents to Guardsman; (iv) failing to keep accurate records; and (v) using the odor exclusion and repetitive pet stain exclusion to wrongfully deny claims.  Am. Compl. ¶¶ 88, 89.  Plaintiff further alleges that Defendant made the following deceptive and/or misleading representations: (i) informing Plaintiff his claim was denied because it was not made within the five-day or thirty-day reporting period; and (ii) informing Plaintiff his claim was denied based on the odor

---

[1] The Court's consideration of evidence regarding a subsequent oral modification of the Service Contract would not run counter to the merger doctrine.  Under the merger doctrine, "representations, negotiations and conversations which precede and accompany the making of a contract are presumed to have merged into the contract."  Wickenheiser v. Ramm Vending Promotion, Inc., 560 So. 2d 350, 352 (Fla. Dist. Ct. App. 1990).  However, the interactions between Plaintiff and the service technician did not "precede [or] accompany" the making of the Service Contract.

exclusion and the repetitive pet stain exclusion.  Id. ¶ 90.  Plaintiff alleges that these actions by

Defendant violated FDUTPA.  Id. ¶¶ 96, 97, 98.  Plaintiff further alleges that the Protection Plan

and Service Contract has no value, id. ¶ 94, and that as a result of Defendant's actions, Plaintiff

suffered actual damages.  Id. ¶ 100.

### 1. Pleading standard

The parties dispute whether FDUTPA claims are subject to the heightened pleading

standard of Federal Rule of Civil Procedure 9(b).  Def. Br. at 15; Pl. Resp. at 6.  Federal Rule of

Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  Some district courts have concluded that a party

pleading a FDUTPA claim must meet the 9(b) standard.  See In re Packaged Ice Antitrust

Litigation, 779 F. Supp. 2d 642, 665 (E.D. Mich. 2011); Blair v. Wachovia Mortg. Corp., No.

11-566, 2012 WL 868878, at ** 3-4 (M.D. Fla. Mar. 14, 2012) ("While federal district courts

have split as to whether FDUTPA claims are subject to Rule 9(b), this Court concludes that

where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of

Rule 9(b) would apply.") (citations omitted).  Other district courts have concluded that the 9(b)

standard does not apply to FDUTPA claims.  See State of Fla. v. Tenet Healthcare Corp., 420 F.

Supp. 2d 1288, 1310 (S.D. Fla. 2005) ("FDUTPA was enacted to provide remedies for conduct

outside the reach of traditional common law torts such as fraud, and therefore, the plaintiff need

not prove the elements of fraud to sustain an action under the statute.") (citation and quotation

marks omitted); Guerrero v. Target Corp., 889 F. Supp. 2d 1348, 2012 WL 3812324, 1354-1355

(S.D. Fla. 2012).

Because the Court concludes that the allegations in the complaint satisfy the heightened

pleading standards of Rule 9(b), it is not presently necessary to reach the issue of whether Rule

9(b) applies to FDUTPA claims.

### 2.  Discussion

Defendant argues that count two should be dismissed because Plaintiff fails to allege a deceptive act or unfair practice.  Def. Br. at 15.  Defendant contends that the terms of the Service Contract are displayed on the face of the contract and are not concealed, and that Plaintiff has not alleged any facts showing an intentional misrepresentation by Defendant.  Id.  Defendant argues that there was no deception or unfairness in the terms of the contract and that Plaintiff alleges no facts indicating that he was misled into his decision to purchase the contract.  Id. at 16.  Defendant further contends that Plaintiff fails to allege that any unfairness or deception caused him injury, and that Plaintiff does not allege recoverable loss in the form of actual damages.  Id. at 17.  Defendant argues that the only cognizable actual damages would be the difference between the market value of the Service Contract as it was delivered and the market value of the Service Contract as it should have been delivered, Def. Supp. Br. at 2-3, and that Plaintiff does not show that "the Service Contract Plaintiff received was any less valuable than the one he decided to buy."  Def. Br. at 17.

Plaintiff argues that he has specifically alleged deceptive and unfair practices.  Pl. Resp. at 7.  Plaintiff argues that he alleged that the terms of the Service Contract were concealed because their existence was unknown, and the Service Contract was hidden inside a box of cleaning supplies.  Id. at 7-10.  He further argues that he alleged he suffered "actual damages," and that the damages are at least the cost of the Service Contract.  Id. at 11.  He contends that the protection of the rug was a specifically contemplated benefit of the Plan, and that the rug was rendered unusable by Defendant's actions.  Pl. Supp. Br. at 4.  He argues that the value of the rug is an additional actual damage under FDUTPA.  Id.

13

The Florida Deceptive and Unfair Trade Practices Act applies to, among other things, "sales based consumer contract claims." Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So. 2d 602, 610 (Fla. Dist. Ct. App. 1997). FDUTPA states, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204(1). The Florida District Court of Appeal explained:

> FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2). See also Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So. 2d 602, 605-06 (Fla. 2d DCA 1997) (discussing the purpose of FDUTPA in light of its legislative history). A deceptive practice is one that is "likely to mislead" consumers. Davis v. Powertel, Inc., 776 So. 2d 971, 974 (Fla. 1st DCA 2000). An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 499 (Fla. 4th DCA 2001) (quoting Spiegel, Inc. v. Fed. Trade Comm'n, 540 F.2d 287, 293 (7th Cir.1976)).

Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). For a consumer to be entitled to relief under FDUTPA, the consumer must "plead and prove that he or she was aggrieved by the unfair and deceptive act." Macias v. HBC of Florida, Inc., 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997). A plaintiff bringing a FDUTPA claim must plead "actual damages;" "actual damages" in the context of FDUTPA is "the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties . . . ." QSGI, Inc. v. IBM Global Fin., No. 11-80880, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012) (citations and quotation marks omitted). "[W]hen the product is rendered valueless as a result of the defect, then the purchase price is the appropriate measure of actual damages." Rollins, Inc. v. Heller, 454 So. 2d 580, 585 (Fl. Dist. Ct. App. 1984) (citation omitted). For the purposes of FDUTPA, "actual damages" do not include consequential damages. Butland, 951

14

So. 2d at 869.

The Court concludes that Plaintiff has alleged facts that, if taken as true, state a plausible claim that Defendant engaged in deceptive or unfair practices.  Plaintiff has alleged that Defendant concealed the terms of the Service Contract and that Plaintiff had no notice of the contract terms to which he would be bound when he purchased the protection plan; this sufficiently alleges an act that is likely to mislead consumers.  Plaintiff further alleges that Defendant sent a service technician who significantly worsened the condition of the rug and that Defendant later denied Plaintiff's claim to correct this damage; this is sufficient to state a claim of an unfair practice that is injurious to consumers.

Furthermore, these allegations are sufficient to meet the pleading standards of Rule 9(b).  "To satisfy Rule 9(b), the complaint must allege facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  Feiner v. Innovation Ventures, LLC, No. 12-62495, 2013 WL 2386656, at *4 (S.D. Fla. May 30, 2013) (citations and quotation marks omitted).  Plaintiff alleges the date, location, and store at which he purchased the contract; he alleges that he was not aware of the terms of the Service Contract at the time he purchased the Protection Plan; he alleges the date that the service technician picked up the rug for treatment; he alleges the date that he spoke to Defendant's representatives by phone and the substance of his conversations with the representatives; he alleges that the representatives informed him that his claim would be denied for various reasons; and he alleges the date that Defendant sent him a letter denying his claim.  These allegations provide sufficient information regarding the date, place, time, and details of the alleged fraudulent or unfair acts.

Furthermore, Plaintiff has sufficiently alleged the actual damages he experienced as a

result of Defendant's allegedly unfair or deceptive practices.  Plaintiff alleges that the chemical odor in the rug, produced by the service technician's treatments, rendered the rug unusable. Plaintiff further alleges that the Protection Plan and Service Contract has no value. Therefore, based on these allegations, it is plausible that the measure of actual damages under FDUTPA would be the purchase price of the rug and the Protection Plan.  Overall, Plaintiff has sufficiently alleged the unfair or deceptive acts and actual damages under FDUTPA.  Factual development is required on this claim, and dismissal, at this stage, is not warranted.

### E.  Breach of Implied Covenant of Good Faith and Fair Dealing (Count Three)

In count three, Plaintiff alleges that Defendant's actions constituted a breach of Defendant's duty of good faith and fair dealing.  Am. Compl. ¶ 104.  Defendant argues that a good faith and fair dealing claim is not a separate cause of action and cannot be maintained in the absence of a breach of contract claim.  Def. Br. at 9.  Defendant argues that, because Plaintiff failed to state a claim for breach of any contractual terms, Plaintiff's good faith and fair dealing claim must be dismissed.  Id. at 10.  In response, Plaintiff agrees that a good faith and fair dealing claim may only be maintained where there has been a breach of contract, but Plaintiff argues that, because he has specifically alleged how Defendant's actions breached the Service Contract and violated the implied covenant of good faith and fair dealing, count three should not be dismissed.  Pl. Resp. at 11-13.

In Florida, "a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements."  Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998).  See also Intercoastal Realty, Inc. v. Tracy, 706 F. Supp. 2d 1325, 1336 (S.D. Fla.

2010) ("A breach of the implied covenant of good faith and fair dealing is not, however, an independent cause of action . . . . [T]he implied covenant of good faith and fair dealing attaches to the performance of a specific contractual obligation.") (citation omitted).

As discussed above, Plaintiff has, at this stage, sufficiently stated a claim for breach of contract. Plaintiff has also sufficiently stated a claim for breach of the implied covenant of good faith and fair dealing. The implied covenant attaches to the express terms in the contract, including the terms regarding the service Defendant is obligated to provide when a claim is filed. It is plausible, based on the allegations in the complaint, that Defendant breached the implied covenant by "capriciously exercis[ing] discretion accorded it under [the] contract so as to thwart the contracting parties' reasonable expectations." Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1291 (11th Cir. 2001) (applying the Florida implied covenant of good faith and fair dealing). Plaintiff could reasonably expect Defendant to make a good faith effort to remove the stain in the rug, not to send a service technician who aggravated the damage in the rug and to then deny coverage for the damage caused by the technician.

Furthermore, the Court notes that the sole ground offered by Defendant for dismissing this count – that Plaintiff has failed to allege a breach of contract claim – lacks merit. Therefore, dismissal is not warranted on count three.

### F.  Unjust Enrichment (Count Four)

In count four, Plaintiff states, "Plaintiff has a valid and enforceable contract which has been breached by Defendant . . . . However, to the extent that this Court finds that the contract is invalid for any reason, Plaintiff alleges that the Defendant has been unjustly enriched."  Am. Compl. ¶ 113.  Plaintiff alleges that Defendant received a "substantial benefit" in the form of payments for the Protection Plan, and that Defendant unjustly retained the benefit without

17

providing services it owed.  Id. ¶¶ 115-117.

Defendant argues that count four must be dismissed because Plaintiff cannot allege both (i) the existence of a contract between the parties and (ii) unjust enrichment regarding the subject matter of the contract.  Def. Br. at 11-12.  Plaintiff responds that its breach of contract claim and unjust enrichment claim are alternative arguments, that it does challenge the validity of the Service Contract, and that unjust enrichment is a question of fact that is inappropriate for dismissal.  Pl. Resp. at 14-15.

"A contract implied in law, or quasi contract, operates when there is no contract to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation."  Ocean Commc'ns, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) (citation and quotation marks omitted).  "Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment [on the grounds that an adequate legal remedy exists] is premature."  Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc., 982 F. Supp. 873, 880 (S.D. Fla. 1997). "Although the term 'benefit' has not been specifically defined by Florida courts, if Plaintiffs have alleged that they conferred a benefit, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss."  Abels v. JPMorgan Chase Bank, N.A., 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009).

The Court concludes that count four sufficiently states a plausible claim for relief. Plaintiff alleges that he conferred a benefit on Defendant via the payment of the Protection Plan price, and that Defendant retained the benefit under unjust circumstances because Defendant failed to provide services it owed.  This is sufficient to state a claim for unjust enrichment under Florida law.

Defendant is correct that the breach of contract claim is not consistent with the unjust enrichment claim, because an unjust enrichment claim may only be maintained in the absence of an express contract.  However, Plaintiff may plead alternative, inconsistent theories of relief. See Federal Rule of Civil Procedure 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Citadel Commerce Corp. v. Cook Sys., LLC, No. 08-1923, 2009 WL 1230067, at **3-4 (M.D. Fla. May 5, 2009) (allowing claims of both unjust enrichment and breach of contract).  Additionally, under Florida law, it is premature to require Plaintiff to choose between the breach of contract claim and the unjust enrichment claim:

> Plaintiff simultaneously alleges the existence of a contract and seeks equitable relief under the theory of unjust enrichment. "Under Florida law, when a party has alternative, inconsistent remedies, his choice of one remedy precludes further pursuit of the second." In re Alchar Hardware Co., 764 F.2d 1530, 1534 (11th Cir.1985). "[R]ecovery of damages under both a quantum meruit and a contract theory is inconsistent, such remedies being mutually exclusive and alternative measures of recovery." Wynfield Inns v. Edward LeRoux Grp., Inc., 896 F.2d 483, 488 (11th Cir.1990). An election between inconsistent remedies, however, "is made after a verdict is entered but prior to the entry of judgment." Id. It is premature, at this stage of litigation, to require Plaintiff to make an election of remedies. See also ThunderWave, Inc. v. Carnival Corp., 954 F.Supp. 1562, 1566 (S.D.Fla.1997).

Bonilla v. Crystal Graphics Equip., Inc., No. 11-21470, 2012 WL 360145, at *4 (S.D. Fla. Feb. 2, 2012).

Therefore, the ground on which Defendant challenges count four lacks merit.  The motion to dismiss is denied with regards to the claim of unjust enrichment.

### G. Unconscionability (Count Five)

In count five, Plaintiff alleges that the Service Contract is both substantively and procedurally unconscionable.  Am. Compl. ¶¶ 123, 124.  Plaintiff alleges that the Service Contract is procedurally unconscionable because it (i) is a "one-sided, 'take-it-or-leave-it' agreement . . . while its terms effectively impose no obligations upon Guardsman;" (ii) is

concealed in a sealed box that is not provided to customers until after they have purchased a Protection Plan, and the customers are not informed of the existence, location or terms of the contract; and (iii) imposes an undisclosed time limit on consumers for requesting service.  Id. ¶ 125.  Plaintiff claims that the Service Contract is substantively unconscionable because it (i) "gives Guardsman unfettered discretion in determining which, if any, of the services to employ;" and (ii) imposes an undisclosed time period for reporting original and follow-up claims.  Id. ¶ 126.

"To succeed on an unconscionability claim, there must be a showing of both procedural and substantive unconscionability."  Woebse v. Health Care & Retirement Corp. of Am., 977 So. 2d 630, 632 (Fla. Dist. Ct. App. 2008) (citation omitted).  "Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand disputed contract terms."  Id. (citation omitted).  "Substantive unconscionability requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience."  Id. (citation and quotation marks omitted).

Defendant argues that count five should be dismissed because Plaintiff has failed to plead either procedural or substantive unconscionability.  Def. Br. at 12.  Plaintiff contends that the complaint alleges specific facts supporting both the absence of meaningful choice and the unreasonable and unfair nature of the contract terms.  Pl. Resp. at 16.

### 1.  Procedural Unconscionability

Defendant argues that Plaintiff has failed to plead procedural unconscionability because Plaintiff does not allege specific facts regarding the absence of meaningful choice or the lack of bargaining power in entering into the contract.  Def. Br. at 12-13.  Defendant argues that a party

20

is presumed to know the terms of a contract he signs, id. at 12-13, and that Plaintiff does not allege he asked for and was denied a chance to see the Service Contract when he bought it. Def. Rep. at 4. Defendant further contends that Plaintiff does not allege any injury as a result of the allegedly concealed terms, because Plaintiff was able to locate the contract terms in sufficient time to make a timely claim. Def. Br. at 12-13. Defendant argues that it was not present at the sale, and that Plaintiff is not bringing claims against Haverty's, the merchant who sold Plaintiff the Service Contract. Def. Supp. Br. at 7 (Dkt. 25). Finally, Defendant asserts that it would not be procedurally unconscionable to provide contract terms at a time subsequent to the execution of the agreement, where the contract terms were accessible by the consumer. Id.

Plaintiff argues that he only signed the Sales Receipt and did not sign the Service Contract, because he was unaware of the existence of the Service Contract at the time he bought the Protection Plan, Pl. Resp. at 17, and because relevant contract terms were concealed. Pl. Supp. Br. at 6-7 (Dkt. 26). Plaintiff argues that he has sufficiently alleged facts supporting procedural unconscionability, including the take-it-or-leave-it nature of the contract, the concealment of material terms, the undisclosed reporting periods, and the fact that he did not know the Service Contract existed before he became bound by it. Pl. Supp. Br. at 7. He argues that the reference on the receipt to the Haverty's website gives no indication that there may be legal terms of a service contract available online. Id. at 8.

"To determine whether a contract is procedurally unconscionable under Florida law," courts look to:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. Under Florida law, a central question in the procedural unconscionability analysis is whether the

21

consumer has an absence of meaningful choice in whether to accept the contract terms. In addition, Florida courts might find that a contract is procedurally unconscionable if important terms were hidden in a maze of fine print and minimized by deceptive sales practices.

Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1135 (11th Cir. 2010) (citations and quotation marks omitted).  A Florida court has found procedural unconscionability where a party was not given an opportunity to read a contract prior to signing it and was not given a copy of the agreement after signing.  Woebse v. Health Care & Ret. Corp. of America, 977 So. 2d 630, 633-634 (Fl. Dist. Ct. App. 2008).

The Court concludes that the allegations in the amended complaint, if taken as true, present a plausible claim of procedural unconscionability. Plaintiff alleges that at the time he purchased the Protection Plan, he had no idea that the Service Contract existed, and he was not given the opportunity to review the terms of the Service Contract.  The Sales Receipt signed by Plaintiff does not list the terms of the Service Contract, nor does it reference the existence of a Service Contract.  Ex. 2 to Pl. Resp. (Dkt. 16-3).  The Sales Receipt states, "Please visit www.myHavertys.com or contact customer service for more information on your furniture protection plan," id.; however, there is no information alleged in the amended complaint or attached as an exhibit regarding what information would have been available on the website at the time Plaintiff purchased the Protection Plan.  Plaintiff's Service Contract is not signed, and it does not appear to have a space for a signature.  Ex. 2 to Am. Compl. (Dkt. 11-3).

If the allegations in the amended complaint are taken to be true, Plaintiff had no opportunity to review or negotiate the terms of the Service Contract prior to purchasing the Protection Plan and he had no notice of the terms to which he would be bound.  These allegations state a plausible claim that Plaintiff lacked meaningful choice in the contracting

process and had no opportunity to understand the terms of the contract.  At this stage of the proceedings, dismissal of this claim is not warranted.

Defendant's arguments to the contrary are not persuasive.  Defendant argues that a person is presumed to know the terms of a contract that he signs, but Plaintiff had no opportunity to sign the Service Contract, and he could not reasonably be expected to request copies of a contract when he did not know the contract existed.  Defendant's argument that Plaintiff cannot show injury from any procedural unconscionability because he learned of the contract terms in sufficient time to make his initial, timely claim for relief also lacks merit; this argument ignores the alleged injury of Plaintiff being bound to contractual terms and obligations of which he had no notice at the time he purchased the Protection Plan.  The Court also concludes that further factual development is required on the issue of the relationship between Defendant and Haverty's, the merchant that sold Plaintiff the Furniture Protection Plan, and in particular whether there existed any agency relationship between Defendant and Haverty's.  Overall, at this early stage of the proceedings, dismissal is not warranted on the claim of procedural unconscionability.

The cases cited by Defendant do not compel a different conclusion.  Defendant cites three Florida cases in support of its proposition that there was no procedural unconscionability here: Briceno v. Sprint Spectrum, L.P., 911 So. 2d 176 (Fl. Dist. Ct. App. 2005); Avatar Properties, Inc. v. Greetham, 27 So. 3d 764 (Fl. Dist. Ct. App. 2010); and Lopez v. Ernie Haire Ford, Inc., 974 So. 2d 517 (Fl. Dist. Ct. App. 2008).  In Briceno, the court, applying Kansas law, concluded that there was no unconscionability where the defendant, a cellular phone service provider, provided notice of changed terms and conditions in a telephone service contract.  911 So. 2d at 180.  The defendant printed notice of the changes on invoices sent to the plaintiff; the notice

stated that the terms and conditions of the phone service had changed, and provided a phone number and website to access a copy of the changes.  Id.  This case is distinguishable.  Unlike the invoices in Briceno, the receipt in the instant case did not provide notice of a contract or terms of the contract.  Although it stated that there was a website to access for more information about the Plan, nothing in the receipt indicates that there were binding contractual terms listed on the website.

In Avatar, the court concluded that, where parties to a purchase and sale agreement signed the agreement and initialed a provision that specifically incorporated by reference a home warranty, the parties were bound by the provision that was incorporated by reference.  27 So. 3d at 766-767.  However, in the instant case, the sales receipt – which was, according to the amended complaint, the only document signed by Plaintiff in connection with his transaction with Defendant – contained no reference to a Service Contract.  Because the receipt did not "expressly refer[] to [or] sufficiently describe" the Service Contract, id. at 766, the Court cannot say at this stage of the proceedings that Plaintiff was bound by the terms of the Service Contract on the basis of the incorporation by reference doctrine.

Finally, in Lopez, the court concluded that no procedural unconscionability existed where the plaintiff signed the contract at issue and initialed an arbitration provision.  974 So. 2d at 519.  This is distinguishable, as well, because here Plaintiff neither signed the Service Contract nor initialed any of its terms or provisions.

For these reasons, the Court concludes that dismissal is not warranted on the procedural unconscionability claim.

24

### 2.  Substantive Unconscionability

Defendant contends that Plaintiff fails to plead substantive unconscionability because Plaintiff raises only the conclusory allegation that the Service Contract "shocks the conscience," without any factual allegations in support.  Def. Br. at 13.  Defendant argues that Plaintiff's unsupported allegations that the contract gave Defendant discretion regarding which service to perform are unsupported and do not "shock the conscience."  Id. at 14.  Defendant asserts that the Service Contract contains deadlines and procedures that define its obligations.  Def. Rep. at 5.  Defendant contends that the Service Contract required Guardsman to provide one or more of a set of services, but that the contract contained no guarantee or warranty of results.  Def. Supp. Br. at 10.  Defendant further argues that the claims of an illusory contract must be measured against only the contract terms that were applied to Plaintiff, and that Plaintiff conceded at oral argument that Guardsman was only required to put forth a good faith effort to fix the rug.  Id. at 9-10.

Plaintiff argues that the Service Contract is an illusory contract because it "gives the promisor the unlimited right to determine the nature or extent of his performance."  Pl. Resp. Br. at 18. Plaintiff further argues that under Florida law, the issue of whether a contract is illusory depends on its terms, and not on the performance of a contract in a specific case.  Pl. Supp. Br. at 9.  Plaintiff contends that the contract is illusory because, once Defendant supplies a consumer with a box of cleaning supplies, it is not required to take any further action.  Id. at 10.

To plead substantive unconscionability, Plaintiff must allege that the terms of the contract are unreasonable and unfair.  See Kohl v. Bay Colony Club Condo., Inc., 398 So.2d 865, 868 (Fla. Dist. Ct. App. 1981).  "[A] contract which is not mutually enforceable is an illusory contract."  Pan-Am Tobacco Corp. v. Dept. of Corrections, 471 So.2d 4, 5 (Fla. 1984).  "Where

one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound." Rosenberg v. Lawrence, 541 So.2d 1204, 1206 (Fl. Dist. Ct. App. 1988) (citation omitted).

The Court agrees with Plaintiff that under Florida law, the issue of whether a contract is illusory is determined by assessing the contract on its face. See Princeton Homes, Inc. v. Virone, 612 F.3d 1324, 1331 (11th Cir. 2010) ("A contract is illusory under Florida law when one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'" (citations and some quotation marks omitted)).

In light of the above law, the Court concludes that dismissal is not warranted on the issue of whether the Service Contract – including the particular terms that pertain to the acts or omissions of Defendant in responding to Plaintiff's claim – is, on its face, illusory. Accepting the allegations in the complaint as true, the Service Contract, which was sent in a box of cleaning supplies, only requires Defendant to, at a minimum, send a claimant a box of cleaning supplies – something which would have already been completed at the time the claimant received notice of the contract terms. At this point in the proceedings, it is plausible that the obligations imposed on Defendant by the Service Contract are so insignificant as to be meaningless. For this reason, dismissal of the claim of substantive unconscionability is not warranted.

Because Plaintiff has stated a plausible claim for relief on the issue of unconscionability, the motion to dismiss is denied as to count five.

## V.    CONCLUSION

For the reasons stated above, the motion to dismiss (Dkt. 13) is denied. The Court will conduct a telephonic status conference in this matter on July 17, 2013, at 11:30 a.m. Ann L.

Miller, attorney for Plaintiff, shall initiate the conference and then include the Court when all

parties are on the line by calling 810/341-7060.  The use of cellular phones is prohibited.

     SO ORDERED.

Dated:  July 2, 2013                    s/Mark A. Goldsmith
     Flint, Michigan               MARK A. GOLDSMITH
                               United States District Judge

## CERTIFICATE OF SERVICE

     The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 2, 2013.

                               s/Deborah J. Goltz
                               DEBORAH J. GOLTZ
                               Case Manager