```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
 2                  SOUTHERN DIVISION

 3

 4   TREVOR BRIEDE,
     on Behalf of Himself and all
 5   Others Similarly Situated,

 6              Plaintiff,

 7                                   Case No. 12-13406
     -v-
 8

 9   THE VALSPAR CORPORATION,
     dba/aka GUARDSMAN,
10
                Defendant.
11   _____/

12
                  REDACTED TRANSCRIPT
13
             MOTION FOR CLASS CERTIFICATION
14         AND MOTION TO STRIKE DECLARATIONS

15         BEFORE HONORABLE MARK A. GOLDSMITH

16      Flint, Michigan, Thursday, June 19th, 2014.

17

18   APPEARANCES:

19   FOR THE PLAINTIFF:    DAVID H. FINK
                           100 West Long Lake Road
20                         Suite 111
                           Bloomfield Hills, MI 48304
21

22   FOR THE PLAINTIFF:    E. POWELL MILLER
                           MELISSA WOJNAR-RAYCRAFT
23                         950 West University Drive
                           Suite 300
24                         Rochester, MI 48307

25
```

1    (Appearances, continued):

2

3    FOR THE DEFENDANT:        PAULA J. MORENCY
                               JEANNICE WILLIAMS
                               23 South Wacker Drive
4                              Suite 6600
                               Chicago, IL 60606
5

6

7    FOR THE DEFENDANT:        JESSICA A. SPROVTSOFF
                               350 South Main Street
                               Suite 210
8                              Ann Arbor, MI 48104

9

10

11

12   David B. Yarbrough, CSR, FCRR
     Official Court Reporter
13   (313) 410-7000

14

15

16

17

18

19

20

21

22

23

24

25

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS

NONE

```
 1          Flint, Michigan

 2          Thursday, June 19th, 2014.

 3          At or about 2:27 p.m.

 4                     --     ---     --

 5          THE CLERK OF THE COURT:  Please rise.  The United

 6   States District Court for the Eastern District of Michigan is

 7   now in session, the Honorable Mark Goldsmith presiding.  You

 8   may be seated.  Calling case number 12-13406, Briede versus

 9   Valspar Corporation.  Counsel, please state your appearances

10   for the record.

11          MR. FINK:  Your Honor.  David Fink appearing on

12   behalf of plaintiffs and with me at counsel table is Powell

13   Miller and Melissa Raycraft.

14          THE COURT:  Okay.  Good afternoon.

15          MS. MORENCY:  Good afternoon, your Honor.  Paula

16   Morency appearing for defendant, the Valspar Corporation and

17   with me at counsel table are my colleagues Jeannice Williams

18   and Jessica Sprovtsoff and with us also today is Mr. Stuart

19   Graff who is the division vice-president for the Guardsman

20   division of the Valspar Corporation.

21          THE COURT:  Good afternoon to everybody.  I'll need

22   just one minute here.

23          (Pause)

24          THE COURT:  All right.  I know we have a motion for

25   class certification and we have a motion to strike declarations
```

1    and I think you can cover them both in your arguments so you

2    can decide how much time you want to spend on each, so we'll

3    start with plaintiffs.

4            MR. FINK:  Thank you, your Honor.  Before I begin, I

5    suppose I should be, I should ask how much time would the Court

6    like us to --

7            THE COURT:  Is three hours a side enough time do you

8    think to cover everything we need to cover?

9            MR. FINK:  Well your Honor, I was kind of hoping for

10   four and-a-half.

11           THE COURT:  There's not much good stuff on TV

12   tonight, I just checked the listings so I'm prepared to go as

13   long as it takes, but to give you some guidepost, why don't we

14   start off with the idea that each side will have 30 minutes to

15   make their arguments on these two issues and I'll give you more

16   time if you need it, but I think that's probably enough to

17   cover the bases.

18           MR. FINK:  Thank you, your Honor.  I think that is

19   the case as the Court is aware, this is not meant to be a

20   demonstrative exhibit, but the case is rather adequately

21   briefed.

22           THE COURT:  Right, no, I did read a lot of pages so I

23   think you all pretty well laid out your positions.

24           MR. FINK:  Your Honor, is it acceptable to the Court

25   if I argue from counsel table?

1          THE COURT:  That's fine.

2          MR. FINK:  Thank you.  There are two motions pending,

3    but I don't think it's really necessary for us to spend much

4    time on the motion to strike.  I think that that was well

5    briefed.  We filed a reply brief, but I think it's pretty

6    straight forward.  The facts are the facts and they're very

7    clear.  If the Court compares the deposition of Mr. Graff to

8    the affidavit of Mr. Graff, there seems to be little doubt that

9    that affidavit is attempting to correct and embellish answers

10   beyond what is acceptable in terms of an offer of proof that's

11   not subject to cross-examination.

12          With respect to Kerry Lawless, Mr. Lawless, it also

13   seems very clear and I'm not so sure that they really respond

14   effectively to this at all that his name and his title, the

15   director of furniture protection plan sales, was never

16   disclosed.  Had it been, we absolutely would have taken his

17   deposition.  We were looking for the person who could answer

18   the kinds of questions that they purport to answer in the

19   affidavit.  Now they don't have much bearing it turns out on

20   class certification because of the ultimate issues that are

21   before the Court, but it was troublesome and therefore we filed

22   a motion in that regard.  I will say there's very little

23   question that when we asked in the interrogatories for

24   witnesses who could support their claims or denials with

25   respect to the answer that they filed, there seems to be little

1    question that in advising us that in answering -- I'm sorry,

2    there seems -- I'm trying not to get into the weeds on this

3    one, but I can't help myself so I'll just say it very quickly.

4         In the Complaint in multiple places we allege that

5    the protection plans are provided to consumers only after their

6    purchase and they deny that, but they never advised us that Mr.

7    Lawless is somebody with information on that and now they claim

8    he does have information.  In they event we'll put that aside

9    because the closer we looked at it and frankly as I was

10   preparing for oral argument, the more clear it became to me

11   that for the most part their affidavits, while bothersome in

12   terms of the volume, are rather irrelevant to the issues that

13   are really before the Court and that really gets us to what is

14   and isn't pertinent to this class certification motion.

15        The merits of the case are pled extensively in the

16   defendant's briefs.  They spend a lot of time talking about

17   what a good company it is, talking about the positive things

18   they've done, but their arguments regarding the merits do not

19   address in any meaningful way the issues this Court really has

20   to decide; numerosity, commonality, typicality, adequacy of

21   representation, predominance of common issues over

22   individualized issues and then ultimately the superiority of

23   the class action device.  The merits determinations and

24   arguments that they make though do raise a fascinating

25   question.  If the defendants really are that certain and that

1    confident that they can and should prevail on a Rule 56 motion

2    on the merits, then they should and we would expect that they

3    would embrace class certification.  ▃▃▃▃▃▃▃ class members

4    would have the determination that the defendants apparently

5    think they should have; that is, the defendants could get a

6    judgment from this Court if a class is certified.  They could

7    get a judgment from this Court supporting the arguments that

8    they're making on the merits.  Now I don't really believe

9    they're as confident as they've suggested that they are because

10   we know what the facts are and I want to talk about them, but

11   only in the context of the elements of and the issues that are

12   pertinent to class certification.

13        THE COURT:  Well, let me ask you.  Would there need

14   to be any significant additional discovery to get to the point

15   where a summary judgment motion could be filed?

16        MR. FINK:  No.  No, I haven't consulted to be able to

17   answer exactly what discovery remains, but I don't, umm, I

18   don't really think that we would need much discovery at all.

19        THE COURT:  Now some courts make the summary

20   judgments motions due along with the class certification motion

21   to address an issue that you're bringing up which might make

22   some sense in this case.  What would be wrong with deferring

23   the class certification motion until motions for summary

24   judgment could be filed and get an assessment really of the

25   merits of the claims so that those merits could be analyzed

1   along with the issue of class certification?  Would there be

2   anything wrong from the plaintiff's perspective in doing that?

3          MR. FINK:  I, I apologize, your Honor, but I can't

4   read the note that I should be able to read.

5          THE COURT:  You want to consult with your co-counsel?

6          (Pause)

7          MR. FINK:  Turns out it was something I knew already.

8   Your Honor, I guess I'll answer only in the context of our

9   expectations and our experience in seeing these cases through.

10  It is not at all unusual that after class certification is

11  granted in a case like this where we think it's fairly clear it

12  should be granted, but after class certification is granted,

13  that creates an opportunity for the parties to sit down and try

14  to work something out and avoid an absolute win/lose for the

15  defendants and by doing that, it's more common that these cases

16  are resolved.

17          Now that may be a very pragmatic answer to the

18  Court's question.  We don't think summary judgment's going to

19  be a close question, we think it's going to be pretty straight

20  forward.  Facts are what they are, the documents are what they

21  are and it doesn't seem at all unlikely to us.  Nothing much

22  has changed since this Court issued its opinion and order on

23  the motions to dismiss, the big change of course is that at

24  that point the Court could only address the allegations that

25  were made.  It turns out we can prove all of those allegations

```
1    so we're pretty comfortable going into Rule 56 that this won't
2    be a close question.  I can't speak for the defendants on that.
3    That said, I think it's more common at least and although not,
4    not exclusively done this way, but it's more common that class
5    certification is determined before the Rule 56 ruling.
6         THE COURT:  Well, I would agree and I would venture
7    to say that it's probably the case where there's significant
8    additional merits of discovery that would have to take place
9    that you would defer the dispositive motion phase of the case,
10   but if what we have here is a case that doesn't really require
11   any significant additional merits discovery, then it seems like
12   this might be a good occasion to invoke the exception rather
13   than the rule.
14        MR. FINK:  Your Honor, the traditional answer to the
15   Court's question is that Rule 23 suggests and states that at an
16   early practical time, the Court determines whether to certify
17   the action for a class certification and of course the
18   corollary is Rule 56 generally lags behind the completion of
19   merits discovery.  I can't argue with the logic of what the
20   Court's saying right now that it is in fact in a case in which
21   limited amount of discovery is necessary, perhaps you'll hear
22   otherwise from the defendants, but with a limited amount of
23   discovery that's necessary, this is a case that could come up
24   for Rule 56 presumably fairly quickly, but the determination of
25   class, the determination of certification of the class itself
```

1  significant, would very significantly advance the litigation

2  and reset the positions of the parties so that they could try

3  to resolve the matter.  That is my guess.  I don't know that

4  and I do know that if that didn't happen, we would follow

5  fairly quickly with a Rule 56 motion, so --

6            THE COURT:  All right.  I hear what you're saying.

7            MR. FINK:  So I'm going to go fairly, I think I

8  should probably go fairly quickly through the elements because

9  I think they're fairly straight forward.  Numerosity in a case

10 where you've got ████████████ plan participants seems fairly

11 clear, but defendants argue that the problem we have with

12 numerosity is that there's an ascertain-ability issue that if

13 you have -- it's difficult to, they say, to ascertain who's in

14 the class and therefore we don't know if we meet numerosity.

15 Of course, with these facts I'm not certain how they can make

16 that argument because they rely upon cases like the Rombareo

17 (phonetic) case which the Court has seen before and the case

18 that involves income disability and there, there were

19 significant individual determinations.  They were trying to

20 establish a nationwide class for people who were denied income

21 disability benefits and in that context, the Court said

22 correctly that in order to determine if somebody belongs in a

23 class regardless of what the policies and procedures of the

24 insurance company are, to determine who belongs in that class,

25 you have to first determine whether an individual is qualified

1    for disability benefits and that's obviously tremendously

2    factually intensive, an individualized question.  Here, we're

3    talking about the same plan for millions of people and the

4    terms of that plan are available to the Court, very

5    understandable in terms of the legal issues that we're making,

6    the arguments that we're making.  When I say understandable, I

7    don't mean the plan itself is understandable, but the issues

8    we're addressing are, but most importantly the issue of who is

9    in the class is not complicated at all.

10          Not only is there an objective determination of who

11   purchased a plan, but they must and do keep records on anyone

12   that owns a plan and they also keep records on these other

13   supposedly individualized issues that they addressed such as

14   whether somebody received a benefit, whether somebody received

15   a refund.  All of those things are ministerial.  They can

16   easily be addressed.  If the Court concludes that there's been

17   unjust enrichment, but that an individual that received any

18   kind of benefit, that that amount has to be reduced or taken,

19   no problem at all and in any event, that's really a damages

20   issue, that's not really an issue in identifying who are the

21   members of the class and I don't think, I won't spend more time

22   on numerosity.  It seems awfully clear that we've got ████

23   ████ plan-holders that numerosity and by the way be do give

24   a chart for every state because we do have the four states in

25   which we're seeking state class actions under the Consumer

1    Protection Act, so and you're dealing even in the state with

2    the fewest plan-holders, you're dealing with hundreds.  There's

3    no circumstance where you get below hundreds of people who are

4    members of or would-be members of these classes.

5             So the second issue and again I have to start, your

6    Honor, I'm primarily focused, but I obviously need to discuss

7    each of the classes.  My argument, I've discussed in terms of

8    the nationwide class that we seek or we're looking for class

9    with respect to unconscionability and unjust enrichment, but

10   each the four state classes that we seek relate to Consumer

11   Protection Act.  So the issue, the argument on numerosity isn't

12   different for the two of them, it's really very clear whether

13   it's a state or a federal claim or United States class that

14   we're looking at, it's very clear that there's no barrier,

15   there's no complication getting to numerosity.

16            Now common issues, that's obviously, commonality is

17   an issue that the Court, courts always have to address very

18   closely if they're making a determination on class

19   certification.

20            In this case, on unconscionability and unjust

21   enrichment, the common issues which we've identified and

22   detailed in the brief are not just extensive, but those common

23   issues are really dispositive of most issues, probably all the

24   issues for liability and even in many cases it will resolve

25   damages also.  So as far as the common issues, with the issue

1    of unconscionability as the Court is well aware breaks down

2    into two categories, procedural unconscionability and

3    substantive unconscionability.

4           With respect to the procedural unconscionability, the

5    defendants do argue rather extensively about one of those

6    issues.  One procedural unconscionability issue that they argue

7    about extensively is whether or not the plan is made available

8    to the consumer before the sale.  Now at best they can say that

9    there are some cases in which that occurs.  They certainly

10   don't a claim because they couldn't that it always occurs.

11          THE COURT:  Well they claim that's their policy,

12   right?

13          MR. FINK:  Well, they claim that it's the policy to

14   encourage it, but not to require it.

15          THE COURT:  I thought it was their policy as they

16   claim to require it, all the dealers to make the plans

17   available.

18          MR. FINK:  I'm sorry, your Honor, that's correct, but

19   they've also indicated that available includes being in the

20   back room in a drawer so that if a consumer requests it, it's

21   provided, but they do not have a requirement that it be posted,

22   that consumers be advised of its existence, that consumers be

23   told how to obtain it, but if somebody requests it, yes, it is

24   made available, or they say it's made available.  We'll have to

25   assume that's true, but here's what's important.  That's one

1      issue on procedural unconscionability.

2              Another issue on procedural unconscionability which

3      they sort of address and it's only other one that they sort of

4      address is the issue of the failure to put in bold letters and

5      highlight the key terms of the contract.  Now they go to the

6      trouble to actually putting bold and large font some of those

7      words right in their brief, but significantly those are the

8      headings, that's all they are so it might say what is covered

9      and what is not covered, but what they don't bold is the

10     classic fine print and the classic fine print here is where it

11     says that it's in their discretion to decide what they will do.

12     The Court has seen the language already, but right in the

13     contracts where it says they may do this, nothing ever says

14     that they shall or they must, that they may do this is in the

15     fine print.  It's in the fine print that they're told, that the

16     consumer is eventually told that the obligations of Guardsman

17     even if Guardsman does decide that it's a covered claim, can be

18     satisfied by providing advice, advice on the phone, could be

19     all that's provided by this so-called protection plan or these

20     so-called protection plans.

21              THE COURT:  Did any of the discovery uncover

22     situations where Guardsman refused to do anything but give

23     advice in the face of a consumer demand for some additional

24     efforts such as a technician coming out?

25              MR. FINK:  I'm not sure I heard the last part the

1    question because the first part the question are there

2    circumstances where all they do is give advice, they freely

3    testified that that happens very often and in fact what the

4    Court will find is that they say there were 500,000 calls and

5    on average apparently in a year and 100,000 forms leading to a

6    technician actually going out or requesting a technician to

7    actually go out, so --

8              THE COURT:  My question is whether discovery

9    uncovered any situations where Guardsman only gave advice when

10   a consumer had asked for some additional effort such as a

11   technician to come out.

12             MR. FINK:  What I now understand is that there are --

13   they have indicated there are circumstances in which their

14   customer service representatives on the phone will decide that

15   based on the information they have, they will not send out the

16   service request form that then has to be mailed in and when

17   they don't send out that form, then no further service is going

18   to be provided, all and they get is whatever they were told on

19   the phone.

20             Now we did not break this down into individualized

21   claims and so we didn't, we didn't look for all of the

22   individuals or records of every individual that called and what

23   information they were provided.  We haven't gotten to that

24   stage of discovery.  We haven't seen that.  I don't know that

25   it's ever going to be necessary in this case for us to find

1    that, but what we do know as the Court knows is that the

2    contract, so-called contract gives them, of course we think

3    it's extraordinarily illusory and provides unfettered

4    discretion, gives them the discretion to only provide advice.

5           Now the last time we were in court, both plaintiff's

6    counsel and defense counsel I think shared one misunderstanding

7    and that was that the same phrase that says they can get advice

8    says they may get a cleaning supply, something like that.

9    Well, we thought and defense counsel I believe also thought

10   because they didn't correct us on this that those furniture

11   protection kits that they get that I showed the Court that were

12   provided to the consumers and provided to our plaintiff, our

13   plaintiffs then when he purchased the plan, that that was the

14   actual cleaning kit.

15          Now in fact what we've learned now through discovery

16   is that there really -- that they're not talking about this

17   furniture care kit that they're given at the time of purchase,

18   but they're talking about a follow-up, some follow-up materials

19   that are sent out to them, but what they've explained to us is

20   these are materials that are prepared to be provided for

21   specific types of requests; for example, you've got ink leather

22   or you've got a round circle that a cup makes, a watermark that

23   a cup makes on a wooden table and they'll have specific

24   cleaning kits to address those issues and they've explained

25   those kits cost, some of them cost maybe ██████████████

1    and at most you're talking about ███████████ for the

2    cleaning kit.  It's actually less substantial than the kit that

3    we showed the Court before, the box that we showed the Court

4    before and in effect now they're providing some folks, but

5    we'll get to that at an appropriate time, but your Honor, I

6    want to get back to this procedural unconscionability issue

7    because as I said there's two things they did address; the

8    issue whether in fact the plans are being made available at the

9    point of purchase and the issue the bold lettering in the

10   contracts which again all the Court has to do is look at the

11   contracts and see that the key terms are not bolded and they

12   are not highlighted for anybody to know about things such as

13   how quickly they have to send in their claims and what the

14   processes is for making the claim.  All that said though, there

15   are several more issues of unconscionability that they never

16   address and they are fundamental and important issues.

17          The contract is of course a contract of adhesion.

18   It's a take-it-or-leave-it contract.  The consumer does not

19   have a right to negotiate any of the terms.  That's always an

20   issue the courts look at.  In this case though it's more

21   egregious than that because they can't deny that there isn't

22   even a contract to sign.  No consumer is told to review this

23   and sign it because there's not even a place where the plan can

24   be signed.  None of these plans is ever signed.

25          The -- while it's a take-it-or-leave-it contract, to

1    make that matter worse on unconscionable procedure, we learned

2    something else that we didn't know at the time of the motion

3    for, umm, motion to dismiss and that is Guardsman requires its

4    retailers to offer no competing plan so when the consumer is

5    offered the Guardsman plan, there are never offered an

6    alternative, competing plan which is of course another issue

7    that's often referred to, that courts often look to in terms of

8    procedural unconscionability, the absence of a choice.

9            THE COURT:  What exactly is the relationship of these

10   dealers to Guardsman?  Are they just unrelated entities that

11   are considered agents of Guardsman or is there some other kind

12   of relationship?

13           MR. FINK:  Well, of course we do believe that they

14   are agents of Guardsman.  Guardsman however says they enter

15   into agreements with these retailers and the retailers then

16   purchase the plans from Guardsman and can mark them up as much

17   as they choose on the resale.  The relationship doesn't end

18   there though because obviously and the reason it continues to

19   be an agency relationship is that when the furniture

20   salespeople, the furniture company delivers the plan, they then

21   need to get back to Guardsman because while the sale is done at

22   the retail store, all of the servicing is done, all of the

23   handling of any kind of claim or any future issues regarding

24   the plan is done by Guardsman including in many instances as

25   the Court I think is aware from previous argument, in many

 1   instances the furniture stores don't even provide the plan, the

 2   physical plan to the consumer, but instead gets mailed to them

 3   by Guardsman or delivered to them by Guardsman.  So there's a

 4   relationship between the retailer and Guardsman which certainly

 5   has many of the components of the agency, but the retailer does

 6   independently in one sense sell the product because they can,

 7   or the service because they can mark it up at whatever number

 8   that they want and they make the choice on whether to give out

 9   that furniture kit that we showed you.

10           THE COURT:  Can they change any of the terms of the

11   plan?

12           MR. FINK:  No.  The retailers cannot change the terms

13   of the plan.  Now it is true though and the reason that

14   Guardsman has said there's a 125 different plans is the

15   different retailers going into the process may negotiate with

16   Guardsman, may work with Guardsman to design different plans

17   for their stores and they've indicated that there are some

18   material differences, but the material differences are things

19   like the length of time that the plan is in place, how much a

20   plan is -- how much is paid for the plan, things like that.

21   What doesn't change in these plans is that Guardsman always has

22   extraordinary discretion in terms of what service they'll

23   really provide and Guardsman makes the determination in every

24   instance as to whether a service is going to be provided at

25   all, but yes the retailers, some of the retailers will work

1   with Guardsman to describe slightly different plans, but the

2   key terms, the ones that are pertinent to substantive

3   unconscionability which I guess we should talk about now, but

4   the ones that are pertinent to substantive unconscionability

5   don't really vary among these plans.

6        Guardsman makes the decision.  Guardsman imposes the

7   requirements that a claim has -- that a form has to be sent in

8   even though it's not clear in the document and it's not

9   highlighted in the documents when they first get these, when

10  they get the plan.  Guardsman maintains and preserves for

11  itself a level of discretion that essentially makes this

12  contract an I'll-do-it-if-I-want-to contract and that's true of

13  all of the contracts that them.

14        Now I would say this.  I think it's worth

15  acknowledging that now they're trying to come forward and try

16  to find among these 125 contracts, find a contract here or

17  there that says Guardsman will do something.  Now there's very

18  few of them, but there are some references to Guardsman will

19  did this in certain circumstances and if in fact this case goes

20  forward, when this case goes forward, it is possible that they

21  will be able on the merits to make a showing that certain of

22  these plans, but I'm not -- I tend to be skeptical, but that

23  certain of that's plans do provide some quantum of value to the

24  consumer and if they do, obviously that's going to be relevant

25  to unjust enrichment.  Basic terms though remained the same,

1    contract, from one contract to another and while the basic

2    question of whether -- I'll talk faster, your Honor.

3           The basic question of whether or not there are any

4    contracts that provide value which again they're trying to put

5    before the Court, they've already testified that in these

6    contracts where they have the option to just give advice, that

7    they may meet all of their requirements by just providing

8    advice on the phone.  They're comfortable when they exercise

9    their discretion, they've done the right thing and they're

10   comfortable with it and that's --

11          THE COURT:  Why would that be necessarily wrong?

12          MR. FINK:  Because it wouldn't be wrong in any one

13   instance.  It's wrong because in all of these contracts with

14   respect to all of these agreements, Guardsman retains the

15   discretion to make the decision whether they're going do

16   anything at all and they can meet the terms of this contract by

17   doing nothing at all or by just giving a quick answer on the

18   phone.  That's what makes these contracts --

19          THE COURT:  Well, they're not taking the position

20   that they've fulfilled the contract if they do nothing, are

21   they?  Aren't they saying that they always do something?

22   Aren't they saying they evaluate a claim and decide what sort

23   of response is appropriate such as advice if it's a matter that

24   they think can be handled with that kind of response or

25   something more aggressive like sending out a technician or

1    replacing the merchandise if it comes to that or offering a

2    refund?  I don't think they're taking the position that they

3    can do nothing, are they?

4            MR. FINK:  No, no, no, to the contrary.  They're

5    saying that they treat these as contracts that require them to

6    do something things.  It's just not true and in many instances

7    as we are already aware, if they get a dissatisfied customer

8    and they can't satisfy him, ultimately they just offer him a

9    refund on the contract.  We had this whole argument about that

10   issue before.  You're not satisfied with the way we're doing

11   business, fine, go do business with somebody else, but by then

12   they've already paid for the insurance, held the ins --

13   so-called insurance, held this for a long period of time and

14   they get no value from it at all.

15           The fact that Guardsman might choose to be a good

16   corporate citizen, the fact that Guardsman might profit or

17   might feel that they profit by conveying a positive image in

18   the retail community doesn't take away from the illusory nature

19   of the agreement.  The contract is illusory if it doesn't

20   require performance by one of the parties and that is clearly

21   the case here.  The fact that they may gratuitously provide

22   some benefits to people because it's in their financial

23   interest and they trumpet the fact that it's ██████████

24   although they don't trumpet the fact that they had over ████

25   ████████████████ in collections for these or revenues from these

1    plans, but it doesn't matter.  If they get ████████████

2    in benefit, it's still an illusory contract.

3          THE COURT:  Well, how is it illusory if they believe

4    that they're under a good-faith obligation to address every

5    claim that's submitted?  I understand your argument that maybe

6    the language doesn't capture that obligation because it doesn't

7    say anything about a good-faith requirement to address these

8    claims, but they're taking the position that that's how they

9    interpret the contract.  Is it illusory if Guardsman operates

10    in that fashion and believes it's committed to providing a

11    good-faith response to every claim?

12          MR. FINK:  Yes because the determination of whether a

13    contract is illusory is not a subjective determination.  It's

14    not based on how did the parties treat the contract or what did

15    the parties think was in the contract, it is what does the

16    contract actually require.

17          THE COURT:  Well, what about the doctrine of

18    practical construction?  Don't we also take into account how

19    parties actually operate under a contract?  I would agree it's

20    no what you have going on in your brain, but if over a period

21    of time you've operated under a contract in a certain fashion

22    and then manifest publicly in court documents that that's how

23    you understand this contract to operate, then doesn't that

24    become part of the interpretive evidence that a Court could

25    consider?

1          MR. FINK:  The Court is absolutely correct in the

2     context of -- oh, first of all the Court is always absolutely

3     correct.

4          THE COURT:  Until I'm reversed.  Then I'm absolutely

5     wrong.

6          MR. FINK:  If you do make a mistake, hopefully three,

7     three nice people will correct it, but the issue and the

8     principles that you address in terms of the course of dealing,

9     et cetera, that arises in the context of ambiguity.  That

10    arises in the context of a contract in which it's not clear

11    what the contract does or or doesn't require.  These contracts

12    are clear.  They give the discretion, so clearly give the

13    discretion to Guardsman that no consumer could bring a direct

14    claim against Guardsman on the contract.

15         Now we've filed claims on the contract also in this

16    case, but really the stronger and more logical case and we've

17    made this clear to the Court from the beginning is that these

18    contracts themselves are illusory.  They are of no value at all

19    because they don't bind the defendant.  I, I hear what the

20    Court is saying, but corollary to what the Court is saying is

21    that any good corporate actor no longer is held to the legal

22    requirements related to what you can and can't put into a

23    contract, how can and can't enter into a contract.  All of

24    these issues of contract -- of the unconscionability of the

25    procedure of how they formed these contracts, these plans, all

1      of these issues remain.  They're still not letting the consumer

2      see it.  They're not encouraging -- I shouldn't say not letting

3      them see it, but they're not automatically making sure the

4      consumer sees it.  They're not having consumers sign it.

5      Signing is something we take for granted in society because we

6      do it so often, but it serves as Court knows a fundamentally

7      important purpose in the context of the contract because it

8      forces the person at that moment of sobriety to look down and

9      see what the terms will and won't be and they don't want and

10     won't let their consumers read that all the discretion rests

11     with Guardsman until after they have the contract completed,

12     the sale completed.

13            THE COURT:  But that's a separate issue.  That's a

14     procedural unconscionability issue.  We were talking more about

15     the substantive unconscionability issue.

16            MR. FINK:  It's correct, your Honor, and --

17            THE COURT:  So let me just stick with that because it

18     seems to me your argument is if a contract provides for

19     discretion as to how a contracting party should perform, that

20     that makes the contract illusory, but don't we have all kinds

21     of service contracts?  Attorney/client contracts, for example,

22     involve attorney discretion in how to perform.

23            MR. FINK:  Not a --

24            THE COURT:  Is that an illusory contract?

25            MR. FINK:  Yes.  If I said to a client I have an

1    engagement agreement for you to sign, a retainer for you to

2    sign and that retainer said legal services will be provided by

3    Mr. Fink at his sole discretion, that's an illusory contract.

4         THE COURT:  But what if it says he'll represent you

5    and the manner of his representation will be at his discretion?

6    In other words, what action to take to represent you.  Isn't

7    that really the analogy here?  Isn't that what Guardsman is

8    saying, we're going to address your claim, we're going to do it

9    in good faith, we're going to side what we think is a

10   reasonable effort to address whatever stain issue or odor issue

11   you present us and here are the different kinds of efforts we

12   might undertake.  We might give you advice, we might send out a

13   technician, we might tell you ultimately we can't and we don't

14   think anybody else can fix this problem, we might replace the

15   furniture for you then or we might offer you a refund.  Aren't

16   there all kinds of service contracts where it's understood

17   there's going to be some discretion exercised by one of the

18   contracting parties and the limitation of course is that it has

19   to be discretion exercised in good faith and reasonably.

20   Doesn't that take it it out of the, the universe of being an

21   illusory contract?

22        MR. FINK:  Not quite and here's why.  I want to go

23   back to the Court's analogy and follow it through.  A lawyer

24   who says to a client I will represent you in that litigation

25   doesn't say at the time how many phone calls he's going to

1    take, how polite he's going to be to opposing counsel and how

2    many depositions there are going to be in the case, but there

3    is a standard of care that that lawyer has to follow and that's

4    why our contracts aren't more detail.  Believe me, nobody would

5    trust a lawyer otherwise.  The fact is we're all subject to

6    third-party review of what we do and there is a rule of reason

7    in terms of what we do.  That does not apply here where you

8    have a commercial agreement and I do want to say this because, I

9    mean, I would actually go, continue this for a long time.

10           I just have to say though that as I'm hearing this,

11   we're really talking about the merits.  We're talking about

12   whether ultimately on a Rule 56 motion or a trial, ultimately

13   can we show that these are unconscionable contracts?  Is there

14   some more evidence that we need to provide and can we show that

15   these are unconscionable?  Now I think the face of the contract

16   is enough, but this Court not only doesn't have to, but

17   shouldn't make a determination on the merits in coming to class

18   certification.  It's not the right order, it's not the --

19           THE COURT:  But aren't there many cases that tell us

20   we're supposed to rigorously analyze the merits, too?

21           MR. FINK:  Yes, and this --

22           THE COURT:  I mean, they have cases that say it's

23   distinct from the merits so we kind of have conflicting

24   signals, but it seems like the most recent signals are that

25   we're supposed to analyze the merits to the extent necessary to

 1    rule on the class certification motion.

 2         MR. FINK:  Exactly, to the extent necessary to rule

 3    on the motion.  In fact and the Whirlpool case in the Sixth

 4    Circuit is a very nice opportunity for the Court, for all of us

 5    to get some guidance out of some cases from the Supreme Court

 6    that may not have been as clear, but the Whirlpool case is

 7    really rather clear in terms of class certification, but here

 8    is the point.  The merits absolutely should be rigorously

 9    pursued to the extent that the Court needs to understand

10    whether in fact a determination can be made on the merits for

11    the class and so, for example, in the Comcast case the Court

12    found that while they were seeking a class for damages, there

13    literally was no way that damages could be proved on a

14    class-wide basis and the trial court didn't, essentially

15    acknowledged that and then went ahead and certified the class.

16    If this Court were to find that there's no way that the Court

17    could make a determination that would apply class-wide because

18    of something related to the merits, absolutely that's something

19    the Court should look at rigorously, but this is quite the

20    opposite of that.  This is a circumstance in which -- this

21    colloquy relates to the merits of the unconscionability claim

22    and I think we'll be able to prevail.  I think we have to prove

23    it, but prove it or not, it's going to be a class-wide

24    determination -- I mean, I shouldn't say it's going to be, it

25    can be a class-wide determination and that's what we need to

1    present to the Court, that it can be a class-wide

2    determination.

3            THE COURT:  Now let's assume I agree with you on

4    matters of substantive unconscionability, can the same be said

5    regarding procedural unconscionability?

6            MR. FINK:  I don't think so.  When you say can the

7    same be said, does the Court mean can the --

8            THE COURT:  That it's necessarily a class-wide kind

9    of determination, that it's either something that applies to

10   all the claimants, potential claimants or it doesn't.

11           MR. FINK:  Yes.  Based on the --

12           THE COURT:  Because when you're dealing with

13   substantive unconscionability you have a limited universe of

14   forums and the terms are at least according to plaintiff's view

15   essentially the same and a Court could come up with a ruling

16   says this contract either is or isn't unconscionable, but when

17   it comes to procedural issues, I want your view on to what

18   extent we would get into individualized determinations of to

19   what extent the contract was made available, to what extent did

20   they know that there was another document embodying more

21   elaborate terms.  Give me your views on that.

22           MR. FINK:  Your Honor, there are certain aspects of

23   procedural unconscionability that are undeniably class-wide, so

24   undeniably class-wide that they didn't respond to them.  The

25   actions of a signature.  The fact that the contract is not

1    subject to negotiation by the party that's purchasing it.  The

2    fact that they don't have an option to deal with a different

3    company; that is, to buy a competing contract because the

4    retailers are limited and told they can only sale one

5    company's, they can only sell Guardsman contracts.  Those

6    things are class-wide and won't change.  We believe -- oh, and

7    certainly the issue what have they bold or don't bold in the

8    contracts, that's class-wide and I don't see how it can change.

9    They found some bold letters and pointed them out, but the key

10   things aren't bolded.

11        The only issue and the Court has raised it, the only

12   issue that the defendants have put in play regarding procedural

13   unconscionability having individualized issues, the only issue

14   they put in play is the question of whether and how the

15   contracts are made available in advance to consumers.  So

16   the -- we believe that we will be able to show the Court that

17   every aspect that we've identified of procedural

18   unconscionability applies including the issue of whether the

19   contract is made available, but ultimately the Court is

20   empowered and will have to look at the totality of the

21   circumstances.  For example, if they didn't make the contract

22   available, but it was taught in every elementary school in

23   America that this is what a Guardsman contract is, maybe the

24   Court would come to a different conclusion if looking at the

25   totality of the circumstances, but the fact is here, they've

1    got some anecdotal examples of places where people do or don't

2    see a laminated copy of the contract or if somebody asks for

3    it, they get to see it, but that's only one issue on procedural

4    unconscionability.  We raised eight or nine and they don't even

5    respond to seven or eight of them and I don't think they have a

6    reasonable response, a meaningful response on the issue of

7    bolding or highlighting the key terms so the only the issue

8    that they are trying to put in play is this issue of do the

9    retailers, to what extent do the retailers make this available.

10          THE COURT:  Let me stop you there on the issue of

11   making it available.  For our purposes do I need to just

12   determine what their policy is or do we need to actually see

13   what happens in the field as to making it available by the

14   dealers?

15          MR. FINK:  That's a good question, your Honor.  In

16   certain extremes of the facts, I think that could play out

17   either way.  If for example they had no policy, but we found

18   that every dealer in America has a sign in their window that

19   says here's the plan for Guardsman and then they've blown it up

20   so it's easy to read, that would be one set of facts very

21   different than what we're dealing with here.  If they have a

22   policy that says we want consumers to get the contract, but

23   then in fact none of the retailers ever make the contract

24   available, that's a different extreme.  We think we're

25   somewhere in the middle of that, much closer to the last

1    example than the first one and their policy isn't that it must

2    be produced and reviewed by the consumer, it's that it has to

3    be available and of course their lawyers told them you can't

4    have somebody sign something and when they ask what it is say I

5    won't tell you, and that's essentially what we're talking

6    about.  If a consumer says we want to see the contract, they've

7    got to have it and they've ought to be able to --

8              THE COURT:  So is it your view that if the company

9    has a policy of directing its dealers to make the contract

10   available, whatever that may mean and some make it available

11   and some don't and I guess you -- I don't know how many dealers

12   there are out there, but there must be hundreds I assume, are

13   we going to have to get into that issue of 35 percent make it

14   available, 65 percent don't make available?  Do we have to

15   cover that as part of the class certification process?

16             MR. FINK:  Certainly not part the class certification

17   process.  I thought your question is whether we have to go

18   there when we're looking at the merits.  I don't even think

19   we're going to need to go there when we look at the merits

20   because as the Court knows in unconscionability, you look at

21   the totality of the circumstances and if the procedural

22   unconscionability is more egregious, at least in certain states

23   and yes, there are variations among the states, but that can be

24   address by the Court, but with something that's as when you

25   have particularly egregious procedural unconscionability on

1    some issues, you don't have address them all.  We chose to

2    raise all of those issues, but we didn't have to address them

3    all.  We could have simply come to the Court and said this

4    contract isn't signed by the parties.  That's procedural

5    unconscionability right there.  This contract is not -- in

6    every state.  This contract is not signed by the parties.

7    That's enough and the fact that it might be or might not be

8    available to somebody I suspect in the that the Court might

9    find that irrelevant, but if the Court does find it relevant,

10   you know, we'll provide to the Court whatever factual

11   information the Court needs before a determination on the

12   merits, but for a class determination, look, if they're right,

13   congratulations to them because if the class is certified and

14   then this Court looks at procedural unconscionability and says

15   well, for whatever reason, I can't do it because I can't make a

16   logical argument for it, but if this Court somehow comes to the

17   conclusion, due respect, that there is no unconscionability,

18   well, that's going to be a giant victory for the defendants and

19   they're going to have that victory for ████████ parties.

20   I don't think it's going to end that way, but I suppose that's

21   one possible outcome.

22         THE COURT:  Well, I want to get back to whether we

23   need to eventually make an individual assessment because let's

24   assume that for purposes of the certifying the class, I just

25   need to make a determination that there's at least one practice

1   that is procedurally unconscionable and some aspect of the plan

2   that is substantively unconscionable.  If we were to proceed

3   then to individual determinations, would the plaintiffs then be

4   locked into just those items that I found were substantiated as

5   sufficient for a class-wide basis or would we perhaps on

6   individual assessments have to determine all eight or nine of

7   the procedural unconscionability issues that you've raised?

8            MR. FINK:  No, it's a class-wide determination and it

9   would be a class-wide determination.  We would not have a

10  certified class and then come into the Court and say by the

11  way, 65 of our plaintiffs went into a store that didn't give

12  them the document.  We're not looking to complicate this.  This

13  is a classic and appropriate class action where we're really

14  only looking for the common issues and we have some answers to

15  the question that I was not perhaps as quick to respond on and

16  that is Mr. Graff who is here today, he's an attorney and he

17  testified for the -- not an attorney for the company, he has a

18  background as an attorney so he's educated.  He was asked about

19  the policy of making the documents available and what he said

20  was they have a make-available policy, but they don't enforce

21  it and they don't monitor the stores to make sure that the

22  stores are honoring that policy, so if we need to get to the

23  merits, we can get to the merits, but I think that's for

24  another day.  I think that that's, that's down the road.  Right

25  now the issue is is there enough here that the Court could make

1    a determination and again I'm certain that the Court can make

2    that determination without reference to the issue of whether

3    the policy's available because procedural -- I said the policy,

4    the plan, procedural unconscionability is rife through this.

5    No signature.  Contract of adhesion.  You can't -- I mean, I

6    don't mean to repeat myself, but I guess I do, but the point is

7    there are seven or eight claims of procedural unconscionability

8    that they don't even address.  Substantive unconscionability

9    they talk about more.

10            THE COURT:  Okay.  Let me give you a two-minute

11   warning so we can hear the other side.

12            MR. FINK:  Okay.  Well, then I'm going to go really

13   quickly on some of the other issues and that is unjust

14   enrichment.  The contract that these people have obtained is

15   illusory.  That's our position.  We think we can show that.  We

16   think we can even show it with respect to this last policy that

17   we've heard.  You talk about illusory, so they have a policy

18   that says we're going to -- I can't help going backwards, but

19   we've got a policy that says that we're going to provide it,

20   but we don't do anything to enforce that policy, but in the

21   end, in terms of unjust enrichment, I'm going to save some time

22   there.

23            I'm going to say something very painful.  It's not

24   painful to the Court, it's just painful to people at this table

25   and that is that we know that unjust enrichment contrary to

1    some of the cases cited by the defendants, we know that unjust

2    enrichment can be the basis, can form the basis for class

3    certification painful from the, if you'll excuse me, the

4    Belford case.  Now we were out of the case by then, but as the

5    Court knows, counsel at this table were involved in that case

6    and this Court made some absolutely accurate decisions on class

7    certification.  Easy for me to say today, but the class made

8    very solid decisions on whether in fact it's appropriate to

9    certify a class for unjust enrichment and it's classically

10   appropriate.

11        Now I'd also call to the Court's attention to Judge

12   Lawson's ruling in Hoving v. Lawyer's Title Insurance Company

13   because I thought he did a real nice job of bringing in a lot

14   of other cases and pointing out the pattern of cases involving

15   unjust enrichment and distinguishing some that are referenced

16   by the defendants.  So, both for substantive and procedural

17   unconscionability and for unjust enrichment, a nationwide class

18   makes a lot of sense.

19        The ultimate, and this is the key.  The ultimate --

20   you don't have to have everything in common, you have to have a

21   common issue and a common issue that will advance the

22   litigation and in here, we have common issues that go right to

23   heart of these claims and actually establish liability if we

24   prevail and we think we'll be able to prevail and show those

25   things.

1          Now I won't waste any time on typicality.  The Sixth

2     Circuit has confirmed in the Whirlpool case that typicality and

3     commonality are very, very close and in this case our

4     plaintiffs are all members of the class and each one of them

5     got one of these illusory contracts -- I'm sorry, David.  Each

6     one of them got one of these illusory contracts.

7          Adequacy of representation, I'm not going to waste a

8     lot of time on that.  I think you've got a pretty good group

9     here of lawyers and as far as the class representatives, there

10    is no conflict.  They've argued a conflict related to the

11    contract claim, but we've been very clear that that contract

12    claim is in the alternative, that we really believe these

13    contracts should be voided.  If they're not voided, then our

14    individual plaintiffs might go forward with the contract case,

15    but they want their contracts voided and they want their

16    refunds.  That's not a -- despite the odd quotations they

17    offered from their deposition transcripts, they've all been

18    consistent, they're all on board and they've all said that they

19    want a refund to be made available for the entire class.

20         Now predominance of common issues, we've got to that

21    already.  We go right to the heart of the case here, the heart

22    of the issues that are really before the Court -- oh, I skipped

23    something and I'll do it very quickly, I apologize and that's

24    the Consumer Protection Act claims and I'll just say this, all

25    of those state acts, each one of them clearly encourages class

1    determination.  These are remedial statutes intended to address

2    endemic problems in business.

3            THE COURT:  Are those subclasses to be done or to be

4    certified only in the alternative if the Court doesn't certify

5    a national class or in addition?

6            MR. FINK:  No, in addition.  We would also like these

7    four state classes to be certified because the Consumer

8    Protection Act do provide some alternative remedies and some

9    alternative issues of liability and the way they're drafted

10   almost in each case, there's -- they look like they were

11   written for this kind of contract and so we would like to have

12   certification on those four states also.  There's fee shifting

13   and other issues in some of them that I think applies, but most

14   importantly it's just additional theories of liability that we

15   would like the Court to look at.

16           No superiority, I'm going to go super fast on.  We

17   argue in our brief, that we say in our brief that we're not

18   aware of another case in the country, nobody on an individual

19   basis, we say we're not aware of any individual who was able to

20   muster the resources to bring a claim against Guardsman and

21   they haven't denied that.  So the fact is it goes back to the,

22   this something that Judge Posner said once and it's been quoted

23   by the Sixth Circuit and quoted again by Judge Lawson, the

24   realistic alternative to a class action he said is not 17

25   million individual suits or in this case ████████████

1    individual suits, but zero individual suits.  If the class

2    isn't certified, other than our four plaintiffs, nobody is

3    going to come forward to file.  They're just going to walk

4    away, take their beating and go home.  They're not going to

5    fight this giant.

6         Now they, it's suggested to us and you found it very

7    interesting they suggest to us that the answer is to go through

8    their claims process and that that's an alternative remedy, but

9    they've even admitted in their pleadings and depositions

10   that -- I'm sorry, in the affidavit that very few people ever

11   prevail on one of those appeals and it doesn't matter because

12   they can't say look we'll handle it in-house, trust us.  That's

13   what this whole case is about, trust us.  We should trust them

14   to do the right thing on the contract and then trust them to do

15   the right thing on an appeal of the contract.  It really

16   doesn't make a lot of sense.

17        THE COURT:  Okay.  I'll give you some additional time

18   to reply.  Let me hear from the defendant.

19        MS. MORENCY:  Your Honor, in preface -- if the Court

20   can just let me know when you're ready?

21        THE COURT:  I'm ready.

22        MS. MORENCY:  Your Honor, in preface I would urge the

23   Court to keep two things in mind which obviously the Court

24   knows from the Laubert (phonetic) decision and that is the

25   premise of a class action is trial by representation.  The

 1   premise is that the trial of the named plaintiff's claims

 2   will necessarily adjudicate the claims of others and the

 3   plaintiff can't use this device to end run the ability that

 4   Guardsman and Valspar has to raise the individual defenses and

 5   challenges that it would when faced with an individual claim.

 6   So as a result Rule 23 is not a pleadings standard.  The time

 7   for presumptions as the Court recognizes is over.  We're now in

 8   the world of real evidence and the burden is on the plaintiff

 9   to show that they affirmatively comply with the four elements

10   of Rule 23(a) and one of Rule 23(b) and I think the record

11   before this Court does not satisfy that test.

12          The Supreme Court and the Sixth Circuit have

13   emphasized the importance of this Court's rigorous analysis of

14   those elements and they do so because of the risk to due

15   process and because of the change in the stakes if a class

16   becomes a class action with all of its attendant notice and

17   expense and risk even before a determination of the merits and

18   sometimes in spite of what the merits are.

19          THE COURT:  Well, what's your view about deferring a

20   class certification decision until summary judgment motions are

21   filed so the merits can be reviewed along with the class

22   certification issue?

23          MS. MORENCY:  Your Honor, I think there probably

24   isn't a way to do that because under Rule 23, the Court is

25   asked to decide at an early juncture whether --

1        THE COURT:  Well, I've seen cases that do that, so

2   there must be a way to do it unless they're all wrong.

3        MS. MORENCY:  Well, they're -- if the plaintiffs

4   them -- I can foresee a way, your Honor, where we would move

5   for summary judgment on the claims by each of the plaintiffs

6   who truly don't have strong positions before this Court, some

7   have no positions, but I think the Supreme Court would probably

8   applying its standard say the Court must first decide what the

9   stakes of the litigation are before deciding the representative

10  claims in order to see if there is a way to decide things on a

11  class-wide basis and obviously there's not in this case.  The

12  individualized issues are huge.  As Mr. Fink just admitted,

13  there are some plans that have value, one must look at the

14  totality of the circumstances at the point of sale, so I think

15  the most efficient route for this Court in deciding the class

16  certification issue is to deny the motion for class

17  certification and then allow the individual matters to proceed

18  afterward so that we can either resolve or adjudicate them as

19  the facts unfold.

20        THE COURT:  Well, let me ask you this.  There are

21  some issues here that seem to be a matter of making a legal

22  judgment about the legal import of words, the substantive

23  unconscionability issues.  It doesn't appear that there needs

24  to be any additional discovery on that.  Doesn't it make some

25  sense in that context to see whether or not plaintiff even has

1   a claim before we decide whether or not the case should proceed

2   at all, whether as a class case or as an individual case?

3          MS. MORENCY:  Your Honor, I think it is appropriate

4   to look at this issue of the so-called illusory contract if

5   that's what the Court is referring to.

6          THE COURT:  Right.

7          MS. MORENCY:  Because I really think it is a red

8   herring for today's discussion because the actual, the proof

9   developed in discovery and the actual wording of the plans

10  reveals statements that Guardsman will perform the following

11  and there's a, if you look for example on the very front page

12  of the plan, the plaintiffs always want to look at the right

13  side of the plan at the service procedures, but if we look at

14  the basic commitment of the service contract, it says if a

15  stain or damage listed in the what-is-covered section occurs

16  during the term of this protection plan, Guardsman agrees to

17  provide service as outlined in the service procedures section

18  of this protection plan.  There is nothing illusory about that

19  and that is why this company acting in good faith has spent

20  more than ██████████████ over the last five years providing

21  cleaning kits in some cases, providing technicians in, to the

22  tune of ███████████████, replacing furniture, repairing

23  furniture, sometimes replacing entire suites of furniture.  So

24  there's nothing illusory about the actual language that is

25  before the Court although it's been characterized otherwise by

1    the plaintiffs, but I think the actual language of that

2    paragraph one of the plan is a commitment and under service

3    procedures if we turn to the right side of the plan, the

4    language is if Guardsman determines that the reported stain or

5    damage is covered under this protection plan, Guardsman will

6    perform one or more of the following.

7         We also know from the uncontroverted discovery that

8    Guardsman has a policy that the consumer drives what relief

9    Guardsman supplies so for example in paragraphs 31 through 36

10   of Mr. Graff's declaration, he takes the Court through the

11   process so if you have a stain on your couch and you call

12   Guardsman and it's a covered stain, then if you want a cleaning

13   kit or advice you're welcomed to it, but the company also send

14   you a service request form and contrary to the representation

15   made to the Court by Mr. Fink, there was no evidence adduced in

16   discovery of a single example where a consumer asked for relief

17   and was told they could only get advice.  It just, in the real

18   world it does not exist and in the real discovery it does not

19   exists, so Guardman's very concrete commitments and the ████

20   ███████████████████ it has spent make really puzzling this

21   reference to an illusory contract because it is not.

22        THE COURT:  Well, we're of course getting now into

23   the merits and that's perhaps some support for this idea that

24   if we're going to get into the merits, don't we need to have

25   full briefing on that in the form of dispositive motions?

1    Because if it turns out that some or all of the contentions

2    that plaintiff is making lack legal merit, doesn't that perhaps

3    either make class certification motion moot if they have no

4    legal merit to any of their claims or narrow really the focus

5    of what I would have to analyze in terms of being class-wide

6    determinations?

7           MS. MORENCY:  Your Honor, I think we have to ask each

8    other what would this motion for summary judgment be on?  Would

9    it be a motion for summary judgment on the claims of the four

10   named plaintiffs or would it be a motion for summary judgment

11   on some uncertified set of events that happened to some of the

12   other ███████████ people which raises all kinds of

13   individualized issues and that's discovery we have deferred as

14   the Court is aware until after there's a decision on class

15   certification, so --

16          THE COURT:  Well, I suppose one way to look at it is

17   to say that the summary judgment motions would address all of

18   the grounds of unconscionability that have been raised by

19   plaintiffs and the grounds for unjust enrichment that have been

20   claimed.

21          MS. MORENCY:  Well, your Honor, each the plaintiffs

22   before this Court can only bring their own claim.  They would,

23   and so if it's a motion for summary judgment on what happened

24   to Mr. Briede and what should be the resolution on the merits

25   of his claim, if there are disputed factual issues, then let's

1    think about where that takes us.  He can't address -- he can't

2    present to this Court a claim of general illusory nature or

3    procedural unconscionability that didn't happen to him, so I

4    think really the most efficient way to address this is first to

5    decide can the issues presented to this Court,

6    unconscionability and unjust enrichment, be decided on a

7    class-wide basis and I submit that they cannot and then after

8    the determination of whether class certification is proper or

9    not, then in this case we can address if it's four individual

10   claims, we can address those.  It probably wouldn't even

11   involve briefing or a trial because the parties would be

12   resolving that.

13        THE COURT:  Well, you're eventually, assuming there's

14   no settlement, you're going to be addressing dispositive

15   motions at some point.  It's just a question of when you do it.

16   Let's assume I certify a class here, you're going to be filing

17   I assume a dispositive motion, would you not or would you just

18   move on to some kind of adjudication on the merits, some kind

19   of trial issue?

20        MS. MORENCY:  Well, the Court asked a telling

21   question because one thing every appellate court that looks at

22   this examines is how can this case be tried because for due

23   process reasons, Guardsman and Valspar cannot be stripped of

24   the due process right they have to answer the claim or

25   complaint of any of the ███████████ people who bought these

1    plans.  Whether they've raised an issue or were properly

2    denied, received a benefit, each fact pattern is going to be

3    materially different.  So if we look at what the due process

4    rights here to face the accuser and address them, then deciding

5    just -- we could decide just the plaintiff's claims unless

6    there are material issues they want to raise, but the first

7    step has to be this Court's determination of whether a class is

8    proper here and it doesn't -- the facts before the Court really

9    don't satisfy any of the requirements of Rule 23.

10             THE COURT:  Well, I'm not sure how due process would

11   be impacted if we were to require dispositive motions on

12   whether or not the contracts are substantively unconscionable.

13   How is due process impacted there?  How are you denied any of

14   your due process rights?

15             MS. MORENCY:  If the grounds for the motion are that

16   they're substantively unconscionable because they are worded as

17   will rather than shall, I'm a little at a loss for what the

18   approach might be if we're talking about --

19             THE COURT:  Well, the argument of plaintiff is or

20   plaintiffs is that the contracts are substantively

21   unconscionable because they are illusory.  Isn't that an issue

22   that would be susceptible to a dispositive motion?

23             MS. MORENCY:  Your Honor, the plaintiffs would

24   only -- I see where the Court is going with this.  So if we --

25   but really it's within the Court's power to decide that in this

1    context of the class certification motion.

2          THE COURT:  Well, we haven't had full briefing on

3    that, have we?

4          MS. MORENCY:  I, I believe we've had a great deal of

5    briefing.

6          THE COURT:  On the merits of whether it's

7    substantively unconscionable?  I don't think so.

8          MS. MORENCY:  We could certainly brief it more

9    extensively, but in the case before this Court on this motion,

10   what we're faced with is the individual issues that would have

11   to be addressed for not only this question of substantive

12   unconscionability which itself is not a claim, but for

13   everything else and the courts are very careful to say that the

14   District Court shouldn't in the words of the O'Neill case,

15   shave off a little issue that does not drive the conclusion and

16   so in a class context where you're dealing with 50 states, some

17   of which look at substantive unconscionability in the way these

18   four plaintiffs do, others require substantive and procedural

19   unconscionability, others require a sliding scale, there are so

20   many issues to address if we're looking beyond these four

21   people that this Court would, would need to address those

22   issues again if plaintiffs renewed their motion for class

23   certification after the summary judgment process.

24         THE COURT:  Well, looking at all the issues that

25   plaintiff has raised, what is really individual about whether

1    or not the contracts have a signature line or not?  That's

2    agreed I assume that there is no signature line, right?

3            MS. MORENCY:  Factually it is true, there is not and

4    there is not a single piece of authority before this Court in

5    all of these binders from the plaintiffs that says that that

6    make a contract unconscionable.

7            THE COURT:  Well, that's a merits issue, right?

8            MS. MORENCY:  Well, it bears on what your Honor is

9    dealing with here because we're looking at what are the

10   individualized issues that have to be addressed to evaluate an

11   unconscionability claim for these ███████████ people and so

12   one of the things that some of the cases look at is what did,

13   for substantive unconscionability, let me just pull the

14   standard out, what are the obligations imposed and is it fair

15   that these are imposed, so it's an individualized inquiry to

16   address anything beyond what happened to the four claimants if

17   I'm understanding your Honor's question.

18           THE COURT:  Well, I'm trying to come up with a way to

19   look at this that makes some sense in terms of proceeding

20   efficiently.  Obviously I don't want to proceed in an

21   inefficient fashion.  I see and I'm not making a ruling now by

22   any means, but just tentatively speaking, what I see is a

23   series of secret issues that have been raised by the plaintiff

24   of procedural and substantive unconscionability and there may

25   or may not be merits to some or all of those issues, but that

 1   hasn't been briefed.  We touched on this very tangentially in

 2   connection with the motion to dismiss, but we certainly haven't

 3   fully briefed all of the issues and I understand now there's

 4   been some discovery and the issues have now been refined in

 5   some fashion.  If it turns out that there are some asserted

 6   grounds for unconscionability that the Court could determine

 7   just lack of merit, then they just fall out of the case at that

 8   point and then I don't even have to think about would what

 9   extent would there need to be an individualized determination

10   of that issue and to what extent does that changed the

11   predominance equation.  I would then be left with a set of

12   procedural and/or substantive issues that I had found do have

13   merit and then I could make a decision on whether or not class

14   treatment is appropriate, so from that perspective, it seems to

15   me bringing these issues together would make some sense.

16   That's why I'm raising this.

17          MS. MORENCY:  Your Honor, this is not the first Court

18   to wrestle with this issue and there is some guidance for us in

19   the case law because people have tried, for example, to certify

20   an issue and what Dukes has told us and what O'Neill has told

21   us is that the plaintiffs cannot end run the predominance

22   requirement for the class they've enunciated and tendered to

23   the Court by just shearing off, that was the phrase, shearing

24   off issues.  That doesn't obviate the need to look at

25   predominance for --

1           THE COURT:  But that's different issue though.

2    That's where plaintiff wants to have the Court focus on one

3    issue that has a class-wide treatment and make that drive the

4    class certification analysis.  I'm suggesting really something

5    that's very different.  I'm saying why don't we isolate the

6    meritorious issues that plaintiff has and see whether then we

7    have a basis for a class action.

8           MS. MORENCY:  And if we think about what those are,

9    your Honor, I think we can address them in the courtroom today

10   because first, we have the actual wording of the plans.  We've

11   gone through what they say.  They're not illusory either as

12   drafted or as applied, informed by the covenant of good faith

13   as the Court has diagnosed.

14          The second issue, the claim that by not signing a

15   document it doesn't become a contract flies in the face of of

16   every insurance policy issued in the United States because

17   those form insurance policies that are sent after you've dealt

18   with your agent and obtained a binder are not something that

19   are negotiated or signed and the same is true of any warranty

20   that you bought at The Apple Store or at Best Buy for the

21   coverage.  Signing a piece of paper is not required to form a

22   valid contract.

23          THE COURT:  Well, those are all interesting

24   arguments, but is that somewhere in your brief?  Have you made

25   these merits arguments?

1          MS. MORENCY:  Yes we have, your Honor.  We've said

2     that -- well, no.  We haven't addressed the issue of the

3     signature that Mr. Fink raised today.  We'd be happy to offer

4     supplemental briefing on that because there is a lot of

5     learning.  There's the whole shrink wrap doctrine that says it

6     is a, in fact I was looking at it for another matter.  I may --

7     I have such a case, your Honor, where the courts have said

8     there is a common pattern in American commerce today where the

9     person walks into a store and at an either in a consumer

10    setting or in the insurance setting, obtains something, doesn't

11    read it, takes it home, has time to look at it and digest it if

12    they decide to read it and then the option is to return the

13    product.  Well, if that's what a consumer chose to do here and

14    it's without question that each of these four consumers got

15    their plan and read it and had the right to cancel it within 20

16    days or whatever days their state provided, then that is a

17    common feature of American commerce.  So there's nothing in the

18    record before you that says that signing a contract is required

19    or reading it at the cash register is required as long as --

20         THE COURT:  Well, I don't have anything before me on

21    the merits, right?

22         MS. MORENCY:  You have the merits that the plaintiffs

23    and defendants hoped to use to address the class certification

24    inquiry, not summary judgment, but for today and the

25    individualized issues that are presented before you are reason

1    enough to deny class certification this afternoon because what

2    the Court has before you is, if we, let's focus for a moment on

3    commonality which was a topic that counsel addressed at some

4    length and the materials that you have before you say that it

5    is the totality of the circumstances that the Court must

6    address, that's Mr. Fink's own words when it comes to

7    procedural unconscionability and substantively he said and I

8    wrote it down because I wanted to make sure to remember it to

9    talk with you about it.  He said certain plans provide value.

10   Well, if that's his acknowledgment, then a departure from that

11   is an individualized inquiry for ███████████ people what

12   value did they get.

13          So those, the concessions bring me back to the

14   argument that I'd planned for you which was can the plaintiffs

15   prove liability for unconscionability or unjust enrichment on a

16   class-wide basis in this case?  The burden is on them to have

17   shown the Court how they would do that, to provide a trial plan

18   and they didn't do it.  They say they have a common claim, but

19   it's really just a collection of common assertions.  They say

20   the plans don't mean anything, they're illusory on their face

21   no matter what they covered, how long they lasted, whether

22   claims were made, whether they were satisfied under a plan, so

23   that common assertion doesn't set out the elements of a claim

24   that can be decided on a class-wide basis and the concept of an

25   illusory promise, really it's a nice phrase, but it's a

1    complete red herring on this record and we've talked about the

2    ways in which there is a promise here and it has been performed

3    in varying ways at substantial expense by Guardsman and so what

4    the Court lacks here is any satisfaction of the burden by the

5    plaintiff that the common questions are going to drive a common

6    answer.

7           They do have a number of lists and bullets and I

8    wanted to address those with the Court because those are really

9    the types of lists and bullets that Justice Scalia warned

10   against in the Dukes case.  He says, well, the plaintiffs say

11   in those lists that this is unconscionable because the

12   Guardsman agreement is a form contract, it's take it or leave

13   it, Guardsman doesn't notify people which is not true, no place

14   to sign it, only Guardsman in these exclusive dealing

15   arrangements as its competitors are in other stores, key terms

16   aren't bold.  So as we unpack the list, I am remained of what

17   justice Scalia said which is the crux the case is commonality,

18   the rule requiring the plaintiff to show that there are

19   questions of law and fact common to the class.  He says that

20   language is easy to misread since any competently-crafted class

21   complaint literally raises common questions and then he gave

22   four examples that sound a lot like these.

23          In the Wal-Mart case he said for example do all of

24   its plaintiffs indeed work for Wal-Mart?  So we say does

25   everybody have a Guardsman plan?  Do our managers have

```
1    discretion over pay?  It's like here, does Guardsman have
2    discretion over what services to provide and in what order?  Is
3    that an unlawful employment practice?  Here he's asking is an
4    illusory contract.  What remedies should we get and Justice
5    Scalia goes on reciting these questions is not sufficient to
6    obtain class certification because they are not common
7    contentions that are going to drive with their truth or falsity
8    an issue that is central to the validity of each one of the
9    claims in one stroke so they can't determine unconscionability
10   or unjust enrichment in one stroke on a class-wide --
11           THE COURT:  Well, what about substantive
12   unconscionability?  Why isn't that driven with one stroke?
13   Either the plans on their face are illusory contracts or
14   they're not.  Why isn't that an issue that is appropriate for
15   class treatment?
16           MS. MORENCY:  Because substantive unconscionability
17   is not itself a cause of action, it's an element of a cause of
18   action for unconscionability and so on a class-wide basis you
19   would still have to consider and in the states that require a
20   sliding scale or procedural unconscionability, you would have
21   to determine those other issues and Guardsman is entitled as a
22   matter of due process to respond on those issues and here where
23   you have unquestionable disclosure of the plans insofar as
24   Guardsman is able, they have requirements, they have policies,
25   they have the, we've submitted to the Court the language in
```

1    Exhibit 13 of the Haverty's agreement which says retailer will

2    make the plans available, then you're -- so if you're just

3    driving the question of what did the plans mean, that is not

4    sufficient to decide in one stroke a cause of action for any of

5    the ██████████ people.

6          THE COURT:  Well, let's take jurisdictions that

7    require both substantive an procedural unconscionability.

8    Let's say I could determine on a class-wide basis whether or

9    not the contracts are substantively unconscionable and let's

10   assume I can decide on a class-wide basis whether the absence

11   of a signature is procedurally unconscionable, why doesn't that

12   decide in one stroke the claim of unconscionability?

13         MS. MORENCY:  Your Honor, procedural

14   unconscionability requires a determination of the facts and

15   circumstances of the acquisition of the plan, so we have

16   Guardsman's policy that the plan be disclosed and any deviation

17   from that is an individualized issue.  That is how the cases

18   fall out.  So if the Court's deciding the plans have a

19   commitment on their face and if the Court is deciding Guardsman

20   has a procedure to make them available, then certainly we would

21   have no quarrel with that, but if the Court is deciding to the

22   contrary, it's not determining whether there is procedural and

23   substantive unconscionability for a particular person as a, as

24   any of these ██████████ people might require.

25         THE COURT:  Well, if the practice is procedurally

1    unconscionable in any respect, would that not be sufficient to

2    satisfy the element of procedural unconscionability?

3            MS. MORENCY:  In which respect are you --

4            THE COURT:  I just said if there's no signature line.

5            MS. MORENCY:  But the lack of a signature line, I

6    would submit there's no authority that that is procedurally

7    unconscionable because we have those contracts all the time.

8            THE COURT:  Well, again we're now drifting into the

9    merits and we don't have briefing on that, but that's the

10   contention of plaintiff.  I'm just using that as an example.

11   Take another example of there's no opportunity to negotiate.  I

12   know you think that that's not procedurally unconscionable, but

13   that's the plaintiffs' argument and let's assume that we have a

14   dispositive motion round and that I'm satisfied that they're

15   right about that, so doesn't that decide the whole claim of

16   unconscionability?  If I rule that the contracts are

17   substantively unconscionable because they're illusory and if I

18   rule that they are procedurally unconscionable, doesn't that in

19   one stroke then drive that decision on that claim, on the

20   entirety of that claim?

21           MS. MORENCY:  It doesn't take away the individual

22   inquiry that we would have to make of someone other than these

23   four people.  So if for example someone were to go into a store

24   to have the plan available to them, have read it, have it

25   summarized for them in a fair way as three of the four

1    plaintiffs say they did here, then -- and even though they

2    didn't sign it, they understood that that was going to be their

3    commitment as these plaintiffs did here, they had commitments,

4    the store had commitments, then you're into an analysis of the

5    meaning of substantive unconscionability and the effect on

6    these individuals that would make it inequitable to grant them

7    relief if they knew that those were going to be the contract

8    terms and that is how the terms were fulfilled.

9         THE COURT:  Well, even if they knew what the contract

10   terms were, if I were to find that it's procedurally

11   unconscionable that they weren't allowed to negotiate over

12   them, doesn't that give the plaintiff whatever they need on the

13   unconscionability claim?

14        MS. MORENCY:  It would your Honor, but it would be so

15   wrong because --

16        THE COURT:  Well, maybe it would.  I'm not making a

17   ruling, I'm just saying that's one of their arguments, isn't

18   it?

19        MS. MORENCY:  I believe that will be one of their

20   arguments, but there are so any individual issues involved that

21   it is not an argument --

22        THE COURT:  Let me get back to what I'm saying.

23   There may be certain individual issues on certain issues.

24   There might be certain, for example the unjust enrichment may

25   involve a panoply of individualized issues.  On the other hand,

1    unconscionability may not, so maybe the sensible course here is

2    to figure out who's right and who's wrong on the merits of

3    these issues and then we can decide whether or not they're

4    susceptible to class treatment.

5        MS. MORENCY:  Your Honor, I really think that that in

6    view of the case law puts the cart before the horse because

7    what the courts try to do is determine early on what are the

8    stakes of the litigation and to decide first an issue that's

9    going to, with -- that might, but in our view won't affect the

10   ultimate recovery of what later becomes a class member is

11   not -- I think it leaves the Court with more in efficiencies

12   than efficiencies.

13       THE COURT:  But let me explore with you another issue

14   that's related.  Now you keep talking about it's an

15   individualized treatment and your due process rights.  We know

16   that there often are class actions where individual claims are

17   rejected because of certain circumstances that make the

18   claimant ineligible for a recovery.  Couldn't that be something

19   that's built into the recovery phase?  In other words if it

20   turns out that it becomes relevant whether or not terms of the

21   contract were actually delivered to a purchaser, isn't that

22   something that we could determine as part of the recovery

23   process to determine whether or not an individual was entitled?

24   For example, the form for collecting could have a box to check

25   whether or not somebody did or didn't receive terms or there

```
1    could be a mini-hearing in front of a master or magistrate
2    judge if you actually wanted to cross-examine every claimant to
3    see whether or not he or she had received a particular set of
4    terms.  It doesn't sound like it would have to be a very
5    elaborate process to raise the kinds of individual claims as I
6    understand them that you're talking about, the individual
7    issues.  So are there more elaborate individual issues you
8    would want that you don't think we could handle in a recovery
9    process?
10           MS. MORENCY:  Yes, your Honor because in, let's say
11   for example of unconscionability.  So what you're looking at
12   not only is a particular type of behavior, but causation on
13   liability and also damages.  So you're right that there are
14   cases that deal with different damage determinations and can
15   assign those to a special master where it's manageable, but it
16   would not only be unmanageable here, but it would be
17   inconsistent with Guardman's due process rights to leave to the
18   checking of a box the question of discovery and probing of
19   whether a potential class member actually had full disclosure
20   and was caused any fact of injury which would have to be
21   determined at the liability stage, not just in calculating
22   damages.  So what your Honor is postulating as a potential here
23   would be invading Guardman's rights to defend on liability
24   against absent class members and let's also think about the
25   lack of manageability because we have ███████████ plans in
```

1    force so no special master would be able to get through the

2    checking of boxes and the sending them back to people for

3    further information, sort of mini-discovery on █████████

4    claims.  It is not only unmanageable, but it illustrates how

5    unsuited this set of claims is for class treatment.  It is not

6    the superior method when there are alternatives that we've

7    explained to the Court where not only does Guardsman make

8    arrangements individually with customers, but it provides

9    refunds.  People have dealt with the, I mean, three of the four

10   plaintiffs -- sorry, two of the four plaintiffs obtained their

11   refund offers through the state Attorney General without

12   needing to retain a lawyer at home.  Now one of them, Corrine

13   Hufflemeyer (phonetic), overlooked the refund offer and

14   Mr. Briede decideed not to take it since he had already hired

15   counsel, but there are more efficient methods and the fact that

16   counsel commented that no one has had the resources to take on

17   Guardsman?  I would submit that the evidence is that no one has

18   had the incentive to take on Guardsman since there's a 93

19   percent approval rating among the people with whom Guardsman

20   actually deals.  So there are more efficient mechanisms for

21   dealing with this in the marketplace and with the governmental

22   help of very well-meaning and well-functioning AG offices and

23   it also just illustrates the contrast between that and what

24   this hypothetical is of having a special master spend a

25   lifetime administering ███████████████████ -- sorry, ████████

1   ████████ potential claims of liability including causation and

2   fact of damage.  I mean, that would impair due process rights.

3        The other issues that I'd like to feature for the

4   Court if I may, I think we have addressed this in part, but I

5   want to make sure we emphasize.  In the briefing that was

6   submitted to the Court, there was much discussion the variety

7   of state laws that define unconscionability and what the proper

8   elements are so I won't repeat that or what's in the charts,

9   but dealing with the plaintiff's accusations of substantive

10  unconscionability reminds me how far we are from the

11  presumptions we were exploring over a year ago on the motion to

12  dismiss.  There are obligations that Guardsman has undertaken.

13  The uncontroverted evidence shows that the cleaning kits are

14  something physically very different from the Haverty's

15  furniture care kit.  The evidence before the Court is that

16  Guardsman sends outs between ████ and ████ cleaning kits per week

17  and that although counsel believes I cannot distinguish between

18  pictures of the cleaning kit and the actual physical cleaning

19  kits, we brought him samples in case he would like to see them.

20        So the evidence before this Court is that there's a

21  great deal of effort that goes on and the response that the

22  plaintiff makes is in their reply at footnote four, page four,

23  they think the plans are not a good value.  They say they are

24  exceedingly poor deals, but that's very different than saying

25  that these plans are illusory and impose no obligations or that

1    they are substantively unconscionable on their face.  To say

2    that they're a poor deal, that only some plans have value

3    really underscores for this Court the individual inquiry that

4    would have to be made for each claimant who plans to bring a

5    claim of substantive unconscionability.

6         With respect to unjust enrichment, counsel made a

7    reference to this Court's past encounters with unjust

8    enrichment and we read that case with interest.  The product

9    that's before this Court is very different from the false

10   diplomas that were coming from the diploma mill.  This Court

11   has already noted in ruling on the motion to dismiss that in

12   Florida there is no cause of action for unjust enrichment where

13   there's a contract between the parties and so the Court has

14   allowed that claim as an alternative to the Briede breach of

15   contract claim and here I submit that the plaintiffs are being

16   very strategic.  They are neither dismissing nor seeking

17   certification of their breach of contract claims that would

18   leave their plans in place, but they are asking this Court to

19   take action by trying to certify an alternative theory to void

20   the plans of ███████████ other people and that inherently

21   prevents individual -- presents individualized issues because

22   the cause of action itself as this Court is well aware asks

23   whether a defendant like Guardsman has retained a benefit under

24   circumstances where it is inequitable or unjust to do so.  Now

25   that individualized issue has led most federal courts except

1    when dealing with false diplomas to refuse to certify a

2    nationwide class based on the theory of unjust enrichment

3    because the elements, the circumstances are going to vary

4    materially and then have to be assessed factually on an

5    individual basis.

6          There's a particularly helpful summary of the caselaw

7    at least as of last fall in the Gustefson (phonetic) decision

8    where the Court denied a decision to certify among other things

9    a nationwide class on a unjust enrichment claim so there are

10   both legal differences nationwide on what the elements are for

11   unjust enrichment, whether it's available where there's a

12   contract as there is here and then individualized fact issues.

13         We also note that there is another problem with the

14   proposed class given that unjust enrichment is a restitutionary

15   remedy.  This class as it's before the Court today, the

16   putative class is a nationwide class of everyone who bought a

17   Guardsman plan within the last four or six or eight years

18   depending on their Statute of Limitations.  That enormous class

19   doesn't take into account the fact that it includes both people

20   who obtained a benefit and people who did not.  People who have

21   been allegedly injured like these four and people who have not

22   and for those who obtained a benefit because it's restitution,

23   there would have to be an accomodation of what benefit did they

24   get and you can't just use Guardman's revenues as a proxy for

25   what benefits were changing hands or even what went out the

1  door.  It would have to be an individualized inquiry.  Did they

2  get a replacement on a 30,000 dollar couch or did they get

3  advice on how to clean a stain and what was that worth to them

4  to get another five years of benefit?  So the individualized

5  issues for unjust enrichment and for substantive

6  unconscionability make this a case that does not satisfy the

7  requirements for class certification.

8          THE COURT:  Couldn't you just exclude anybody who

9  received any kind of benefit?

10         MS. MORENCY:  Well, your Honor, that's not the

11  proposed class definition.

12         THE COURT:  No, no.  You can certify the whole class,

13  but then when it came time for some recovery, you would exclude

14  from recovery anybody who's received a benefit.

15         MS. MORENCY:  Your Honor, the determination of that

16  would require individualized issues.  To determine who's in the

17  class --

18         THE COURT:  Why?  Don't you have records that show

19  who's received a benefit?

20         MS. MORENCY:  Your Honor, there's -- there are

21  records of those that had a technician visit and those would

22  were given a coupon to go re-select, but the value of that

23  benefit being calculated for, you know, ███████ people is

24  an enormous job and there is ample --

25         THE COURT:  Why would you have to calculate?  Why

1  couldn't you just have a rule that said anybody who's received

2  any benefit can't participate in the recovery?

3       MS. MORENCY:  Well your Honor, as a practical matter,

4  if claims come in, let's say there are ███████████ claims and

5  names are different, locations are different, somebody changed

6  an address, the manageability even testing that, even against

7  and I, you know, IBM and Google's computer systems, let alone

8  one in Grand Rapids that tries its best, it would be wholly

9  unmanageable to do that and it would interfere with Guardsman's

10  due process rights to put that burden on them to say that we

11  must go out and determine who's had a benefit, who's been

12  caused an injury.

13       THE COURT:  Isn't that in your records which of your

14  customers have received some kind of benefit?

15       MS. MORENCY:  There are records that go back some

16  years that will show if someone had a tech visit, had a follow

17  you have tech visit.  It doesn't necessarily reflect who

18  thought that was the right benefit or the exact amount that was

19  paid for that visit.  It doesn't show the value of the

20  furniture that they went and re-selected, if there's a credit

21  open with the retailer because Guardsman sends them back to the

22  retailer to get the, you know, whatever replacement if they're

23  at that stage.

24       THE COURT:  Couldn't you just exclude anybody that

25  had a technician come out or who had had any kind of benefit

1    received, a coupon, a credit, replacement of furniture?

2           MS. MORENCY:  Your Honor is really redefining the

3    class as we stand here.  It's not the class before you and --

4           THE COURT:  No, no.  The class would be certified the

5    way plaintiffs are talking about, but in terms of the recovery,

6    you can make all these adjustments you wanted.  You could say

7    we're not going to send a claim form to anybody who had a

8    technician's visit, they just don't recover.  Why couldn't we

9    do that?

10          MS. MORENCY:  It really begs the question under Rule

11   23(a).  It's really illustrating the individualized issues that

12   make class treatment inappropriate.  We can deal with these

13   four people.  We know what their claims are.  We should be

14   entitled to deal on the same basis with anybody else who comes

15   forward, but on an individual claim there's really no driver,

16   there's no rationale, no satisfaction of the burden under Rule

17   23(a) to show that with one stroke the Court can determine

18   liability including causation and fact of damage for an

19   individual claim.

20          THE COURT:  Okay.  Let me give you a two-minute

21   warning unless you've wrapped up at this point.

22          MS. MORENCY:  Thank you, your Honor.  Your Honor, in

23   connection with the state claims we wanted to note that the

24   same factors that weigh against certifying a class on

25   unconscionability and unjust enrichment also weigh against

1    doing so in the four state Consumer Protection Act claims.

2    That's true in Michigan where a claim under the Michigan

3    Consumer Protection Act as the Court is aware requires proof of

4    deception, reliance, causation and actual damages which are

5    inherently individualized issues.  The same is true in the

6    other states and in the O'Neill case where the Court denied

7    certification under Florida law, the listing of reasons why

8    those could not be evaluated on a class-wide basis I think are

9    persuasive and relevant to the facts presented before this

10   Court.  Similar analysis applies to Missouri and to New York

11   where the only cases where presuming reliance is permitted are

12   fraud in the market cases which this obviously isn't.

13          So your Honor, what we have before you is two causes

14   of action that have very subjective and individualized

15   elements.  Those causes of action can't be determined on a

16   class-wide basis.  In the fundamental conclusion of any

17   analysis of a motion for class certification is the question

18   could the Court try one claim for the plaintiffs and resolve

19   the claims of ██████████████ other people and I would submit

20   that what's been submitted to the Court doesn't permit that.

21   You can't check all the boxes on a cause of action in a

22   courtroom and the idea of doing it in a special master's office

23   to fill in the blanks for liability and damages really

24   illustrates how this is inappropriate for class treatment.  The

25   superior method is the individual actions that are before you

1   or the Attorney General methods and otherwise as a matter of

2   due process, measuring ███████████ individual claims against

3   the laws of their applicable states makes this inappropriate

4   for class treatment.  Thank you.

5           THE COURT:  Okay, thank you.  All right, Mr. Fink,

6   I'll give you 10 minutes for rebuttal.

7           MR. FINK:  Okay, your Honor.  I can do that very

8   fast.  First -- if the Court doesn't mind, I will start right

9   now.

10          THE COURT:  Go ahead.

11          MR. FINK:  I'll go in reverse order.  This last issue

12   we heard about the Consumer Protection Act.  The very basis of

13   these consumer protection acts in all states was to get by the

14   issue of how difficult it was to prove fraud through reliance

15   on an individual basis.  The statutes have various different

16   components and many of them if not most are based on objective

17   standards for the reasonable person and there's a ton of law on

18   that.  The Dix case which came out, American Bankers and Dix

19   case which came out early on made that very clear in Michigan,

20   but it's true in the other states and the law is plenty.  There

21   have been plenty of class actions certified.  There wouldn't

22   have been if it were true that reliance is required in each one

23   of those cases.

24          I think if we take the argument, the broad themes of

25   the argument we just heard from defendant, what we really heard

1    was her client wants due process which is impossible for her

2    client to get because they're so big.  Her client is entitled

3    to individualized determinations of all ▮▮▮▮▮▮▮▮ claims

4    and because of that, there can't be a class.  Now if they only

5    had 8,000 warrantees out or plans out there, I'd suppose she's

6    saying it would be okay, but the fact is there's a ton of law,

7    there are plenty of references in the cases that say just

8    because you're big, just because you're big doesn't mean you

9    can't be sued in a class action.

10              Now the suggestion was made that the answer is to go

11   to the attorney generals of the state.  You talk about an

12   alternative, you've got an individual who can just be a member

13   of the class by not opting out or in the alternative they can

14   bring a formal claim with their Attorney General, go through a

15   process and what we've already learned in this very case is

16   that when our client, our first client, Mr. Briede, brought his

17   claim, he didn't get a result from the Attorney General.  What

18   he got from the Attorney General was that a commitment was made

19   by Guardsman, they made an offer to offer and that was

20   addressed in fact in this Court's ruling on the motion to

21   dismiss.  There is absolutely nothing efficient about going to

22   the Attorney General, but here's where we really seem to have

23   gotten lost in this or counsel has and that is the suggestions

24   made that the term in one stroke from Justice Scalia, that that

25   term means the entire case is disposed of, that you've resolved

1    liability, resolved damages, resolved everything.  Not at all.

2    The basic principles of class action law under 23(a) have not

3    changed and the Court has said that the basic underlying

4    principles are still the same and one of the those principles

5    is that if you have a common issue which will drive the

6    litigation forward which is significant and central to the

7    litigation, it doesn't have to be central, but that would

8    significantly drive it forward, then a class is appropriate.

9    In this case, we have specific decisions that can actually

10   dispose of the case in most instances with this exception of

11   how do you determine damages and yes there will be some issues

12   on remedial, remedial issues, but shockingly simple in this

13   case compared to most cases because in this case we know who

14   had a plan and she says maybe they can't find those.  If they

15   can't find them, apparently they don't have a plan anymore, but

16   the fact is they do have a process of locating these people and

17   if they do have that information, they are keeping for their

18   own business purposes.  They know if they've already sent out a

19   cleaning kit.  Fine, give them a ███████ credit if they

20   sent out a cleaning kit, but that's a merits thing and remedies

21   think way down the road.  Maybe they bought them new furniture?

22   Well, those folks no doubt aren't going to get anything because

23   they got a benefit.  For their unjust enrichment, they clearly

24   had a significant benefit and so it's not fair to say that.

25   The fact is this is really very straight forward.  They got

1       ███████████ policy-holders if you want to call them that and

2  they say that about ████████ times a year they deal with

3  something substantive for these folks that goes beyond

4  understand just answering something on the phone.

5              So your Honor, I wanted to just talk about couple of

6  specifics.  Counsel suggested that I said totality of the

7  circumstances suggesting that you have to look at each

8  transaction?  No.  What I was saying was you look at procedural

9  unconscionability in terms the totality of the information that

10  we have and what we had is a situation in which there's not

11  just no signature, it's a take-it-or-leave-it deal.  There's no

12  choice.  They've set it up so you don't have an option to go to

13  another company.  They do not have a policy to ensure that the

14  consumer gets to see the plan.  They don't have that policy and

15  they have clearly acknowledged that they really don't highlight

16  the key terms so much so that today counsel wants to read to us

17  from the contract and say that this contract has mandatory

18  requirements because it says will, not, shall, but it still

19  says will.  Let's be clear.  The language that was read was if

20  a stain or damage listed in what is covered occurs during the

21  term of this protection plan, Guardsman agrees to provide

22  service as outlined in the service procedure section.  We all

23  had this when we were in court before and the Court's already

24  addressed this issue in the motion to dismiss.  The service

25  procedures that you're referred to are where the complete

1   discretion rests.  If Guardsman determines a reported stain or

2   damage is covered, it will perform one or more of the following

3   and here's where we get to the one or more the following

4   includes the cleaning kit, but it's provide a cleaning kit or

5   advice.  It doesn't say they must provide a cleaning kit and by

6   the way as far as these cleaning kits, yes we would like to see

7   them, but the reason we would like to see them is we've been

8   requesting them for months and they've been giving us all kinds

9   of reasons why they wouldn't give them to us.  It doesn't

10  matter what the cleanings kits do because -- or what the

11  cleaning kits are because those cleaning kits are still of just

12  nominal value at best and as they say, they sent out ▇ to ▇

13  a week, so over the course of a week they send ▇ to ▇

14  times, they've got ▇▇▇ plan-holders, ▇▇▇

15  plan-holders and they've spent if it's, call it ▇▇▇ a

16  plan, there's -- a cleaning kit, they're spending between ▇

17  and ▇ dollars a week in providing benefits with these

18  cleaning kits.  So your Honor, that is clearly not the answer

19  to establishing that there's value.

20          I don't understand.  Counsel has suggested that the

21  argument that this is illusory is a red herring?  That's the

22  heart of our argument.  We've made it all along.  We've been

23  clear all along.  This isn't knew.  All of these discussions

24  that we've heard today about due process, all of those

25  discussions regarding due process are just a broadside attack

1    on class actions.  This is -- this has all the makings of a

2    class action and it's absolutely true.  If there was no Rule

3    23, this would be a fascinating debate, but there is a Rule 23

4    and it says when there are common issues and we've identified

5    what those issues are and those would move the case forward,

6    then it is appropriate.  In fact, it is required that a class

7    be certified in that context.

8           Now they talk about shaving off a little issue?  I

9    won't waste much time on that, but a little issue?  Illusory

10   contract?  Unconscionable contract?  That's not a little issue.

11   None of these things are little issues.  They go to the heart

12   of what's here.  The little issue cases are cases where

13   somebody tries to bootstrap something in.  We did not shave off

14   a little issue.  This is what the entire case is about.

15          I didn't -- counsel -- oh, I already addressed the no

16   signature issue, yeah.  Counsel says it's not just no

17   signature.  Well, that's true, there are contexts, but not in

18   the full context of what we've had and counsel suggested they'd

19   give you cases.  We didn't hide this issue.  We have addressed

20   this issue from the very beginning of the case, so I don't see

21   where there's anything necessary on that.

22          Now I do want address something very important

23   because she -- I said something and apparently I confused

24   counsel and I hope I didn't confuse the Court when said it was

25   possible that certain plans have value.  I'm going to take a

 1   moment.  I'm going to slow down and be very specific about

 2   this.  In the affidavit from Mr. Graff if this Court accepts

 3   that affidavit, in the affidavit from Mr. Graff for the first

 4   time they attached several policies making some arguments about

 5   them.  Out of their 125 policies, I did see one that related to

 6   adjustable beds and that particular policy that related to

 7   adjustable beds said in certain circumstances Guardsman will do

 8   the following.  It didn't seem to have quite as much discretion

 9   as we've seen in all the other policies, but that's not a

10   problem.  What that means is if the class is certified and

11   they're able to show that as to those individuals who bought

12   that policy, that those individuals got something that wasn't

13   illusory, fine, they got something that wasn't illusory.

14   They're either -- either the class is refined or they're -- or

15   a determination is made on what relief or lack of relief goes

16   to those people with those contracts.  By the way, it's a small

17   sub-set obviously of what we're dealing with because we didn't

18   even hear about it until just now.  I don't even know because

19   we haven't looked closely.  We don't know what all of the terms

20   are related to those contracts, but it does appear that they

21   might, but if a company has ██████████ policies out there,

22   ██████████ plans out there and 100 of them provide some

23   actual non-illusory benefit and ██████████, I'll never get

24   to it, ██████████, I -- whatever, the rest, umm,

25   ██████████ of them provide an illusory benefit, that doesn't

1    stop the class from being certified.  That's an issue to

2    address at a later time as we go through the case.  If they

3    want to make that defense as to them, they can present that

4    defense.

5           Now your Honor, the -- counsel said that she was

6    going to tell you about a lot of individualized issues, but in

7    the end the only individualized issues they talked about was

8    whether there was anything received and we've already dealt

9    with that because there are records to show that and we can

10   deal with that at the remedy phase and possibly they would

11   argue as the Court was addressing that in, that maybe the

12   procedure that somebody experienced in one store was different

13   than in another, but that doesn't wipe out all of the other

14   unconscionability arguments, all of the other procedural

15   unconscionability arguments and if it turns out that one

16   particular company had a -- retailer had a different policy for

17   how they presented the information, that's a defense that they

18   can raise.  They're not being barred from raising that defense

19   or presenting that defense as to certain members of the class.

20   They can do that.  They can say that we're going to draw a

21   distinction, it's going to be necessary to have sub-classes if

22   that happens, but when you've got ███████████ people

23   involved, that shouldn't be a big surprise.  So --

24           THE COURT:  Okay.  Big finish, one minute to go.

25           MR. FINK:  Your Honor, thank you for the time.  We

1    appreciate the opportunity to argue.

2           THE COURT:  Okay.  I want to see counsel back in my

3    chambers.  Thank you.

4           (Motion hearing concluded at 4:29 p.m.)

5                        --    ---    --

1                    C E R T I F I C A T E

2

3

4

5

6

7          I, David B. Yarbrough, certify that the foregoing is

8    a true and correct copy of the transcript originally filed with

9    the Clerk of the Court on September 17th, 2014, and

10   incorporating redactions of personal identifiers request by the

11   following attorneys of record or parties:  Jeannice D. Williams

12   in accordance with Judicial Conference policy.  Redacted

13   characters appear as a black box in the transcript.

14

15

16

17   10/29/2014                  /s/ David B. Yarbrough

18   Date                        David B. Yarbrough, CSR, RPR, FCRR
                                 231 W. Lafayette Blvd.
19                               Detroit, MI  48226

20

21

22

23

24

25